### WHITING v. ELMIRA INDUSTRIAL ASS'N.

(Supreme Court, Appellate Division, Fourth Department. November 22, 1899.)

1. NUMEROUS PARTIES—ACTION BY ONE IN BEHALF OF ALL.

An action was properly brought in behalf of plaintiff and all others similarly situated where they were very numerous, and would be entitled to become parties plaintiff at any time, and would also be subject to their part of the expenses incurred.

2. SEPARATE CAUSES OF ACTION—JOINDER.

A syndicate organized to build up a suburban manufacturing village on land belonging to it made a duplicate agreement with each of several hundred purchasers of lots from it at uniform prices that the net profits from the sales to them would be devoted to securing factories and improving streets, and that the profits on other lots sold by it above a certain price would be divided among these purchasers. *Held*, that for varying damages to each purchaser from the syndicate's breach of its agreement to establish factories, and to compel it to account for profits, the purchasers might jointly maintain an action against it, the same being a union of legal and equitable causes of action, in claims arising out of the same transaction, consistent with each other, affecting all parties to the action, and not requiring different places of trial, within Code Civ. Proc. § 484, permitting such a union of causes of action in the same complaint.

Appeal from special term, Steuben county.

Action by Charles W. Whiting against the Elmira Industrial Association of Elmira, N. Y., for a breach of contract and for an accounting. From an interlocutory judgment entered on overruling a demurrer to the complaint, defendant appeals. Affirmed.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, and SPRING, JJ.

Frederick Collin, for appellant.
James Sebring, for respondent.

SPRING, J. The plaintiff has brought his action in behalf of himself and all others who are similarly situated, and, as they are very numerous, the action is properly maintainable in that form. It is, in effect, the same as if all had joined as plaintiffs, for the right is theirs at any time to become parties plaintiff, and thus to be the recipients of any benefits accruing to the plaintiff in name; and they would also be subject to their part of the expenses incurred. Hirshfeld v. Fitzgerald, 157 N. Y. 166–180, et seq., 51 N. E. 997; Persons v. Gardner, 42 App. Div. 490–500, 59 N. Y. Supp. 463; Brinckerhoff v. Bostwick, 99 N. Y. 194, 1 N. E. 663. The facts set forth in the complaint, which is a very voluminous document, may be epitomized as follows: The defendant is a corporation organized for the purpose of selling lots and building up a manufacturing village adjacent to the city of Elmira upon land which this syndicate owned. That, in furtherance of this project, the defendant

advertised for the sale of these lots, holding out in specific statements the inducements and benefits which would result from this purchase. To make these representations and inducements effective, it caused an agreement to be prepared and duly executed on its behalf, setting forth in minute detail the scheme which it contemplated, and a duplicate of this agreement was delivered to each purchaser of a lot on said tract of land. Said defendant agreed therein to sell one lot for $200, payable in monthly payments, as therein stipulated. That the price for lots for all subscribers thereto was to be uniformly $200 each. That "when sufficient lots have been sold to insure the success of the association's plans," and 60 per cent. of the purchase price thereof has been paid in cash, an allotment of these various lots was to be made among the several subscribers in the manner prescribed in said agreement, and upon such allotment a land contract was to be given to each subscriber, conforming to the scheme outlined, to be supplemented with a deed conveying to said subscriber an indefeasible title to his lot when the same was paid for in full. The association further covenanted in said contract that all the net profits arising from the sale of lots to said subscribers were to be devoted to securing and establishing factories on the factory sites designated and improving streets on their plot, the inducement being this would bring into said prospective village from 2,000 to 4,000 employés. That the said association reserved the right to sell any of the lots in said allotment at retail prices, and further agreed "to divide the profits arising from such sale of lots, above the uniform price pro rata, among the subscribers." That the plaintiff, in common with several hundred other persons, purchased lots of said defendant in reliance upon its representations, and entered into the contract set forth, and the allotment was made in pursuance of the plan of the said defendant, and plaintiff acquired his lot, and, after paying for the same, obtained a deed therefor, as did the other purchasers and subscribers, and they have since been in the possession and enjoyment of their respective lots. That the net profits from the sale of said lots above the uniform price per lot aggregates over $250,000, and that the net profits arising from the sale of lots at retail prices amount to over $100,000. That defendant has refused and neglected to devote any considerable portion of said $250,000 to securing and establishing factories or improving streets, as it agreed to do in said contract, and that it has failed and refused to divide ratably any of the net profits arising from the sales of lots above the uniform price fixed for each lot among the respective subscribers. The failure and neglect of the defendant to perform its covenants, and the consequent failure of the project to bear fruit in a prosperous industrial community and in the accruing advantage to the plaintiff and other subscribers, are set forth at length, and the damage to plaintiff is stated to be the sum of $500, and that each lot is worth materially less than if said covenants had been performed by the defendant. The relief asked for is an accounting for the purpose of ascertaining all the profits arising from the sale of these lots, the ascertainment of the share of the plaintiff and also of the other subscribers, and the

amount of damages sustained by each of the same, and a judgment in favor of the plaintiff and of each of the other subscribing purchasers.

The subscribers who were in on the ground floor by purchasing at the uniform price of $200 have a common interest in the omission of the defendant to expend the net profits it received from the sale of these specific lots, and also the profits accruing from the retail sales. If this action can be maintained at all, it must be because of this community of interest, and to avoid numberless actions, each based upon identical facts, and each for similar relief. The scheme outlined in the complaint has evolved two separate funds, in which the plaintiff claims a distributive part: First. That the failure of the defendant to expend the profits it received in securing manufacturing industries to locate on the designated sites has removed the inducing cause for the purchase of the lots by plaintiff and the other subscribers; that the effect of this omission has been to prevent their lots from enhancing in value; that this failure constitutes a breach of the agreement; and that the fund thus set apart for this specific purpose is held by the defendant for the benefit of these lot subscribers, and they seek an ascertainment of its amount and its distribution. Second. That the other fund arises from the sale of other lots than those to the subscribers, and their interest in that fund is derived from the explicit agreement of the defendant to distribute it among the subscribers. The defendant contends that there are two distinct causes of action, and that they are inconsistent in form, and that the judgments rendered must be incompatible; that the first is based upon damages occurring to the several lots; that the breach of the agreement to build factories simply affected the value of these various lots; that the plaintiff can maintain an action at law to recover these damages; that the other cause of action is pure and simple an accounting, and a ratable distribution of the net profits of that fund. Let us see what it will be incumbent upon plaintiff to prove under his complaint. The agreement speaks for itself, and the primary rights of the parties must be determined from that. A breach of the agreement to erect manufacturing industries must be shown. That established, the amount of the net profits must be arrived at. These are the two distinctive features in the cause of action. When they are determined, the distribution of the fund is a mere incident. It may be that one lot owner can show a greater diminution in value of his lot than a more remote subscriber, but this fact does not affect the right of action, but merely the devolution of the damages,—the incidental result of that right. As a matter of practical reaching of results, the probability is that the fund, if any, will be directed to be distributed equally among the subscribers, as an attempt to adjust their rights according to the probable effect that would have resulted from an expenditure of this fund for the improvement of the village would be too speculative and uncertain. In the other phase of the case the plaintiff must show a breach of the agreement, and the possession of the fund by defendant; and its division then follows perforce the agreement,—that is, the agreement is the

basis of recovery in each aspect of the case. The parties are identical. Each depends upon a failure to perform, and each requires the defendant to account; and the only barrier to the development of the action lies in the question of damages, which is more mythical than genuine. Section 484 of the Code of Civil Procedure permits the uniting of two or more causes of action, whether they are "legal or equitable or both," and "upon claims arising out of the same transaction or transactions connected with the same subject of action." They must be consistent with each other, affect all parties to the action, and not require different places of trial. If two causes of action are set forth in the complaint, they arose out of the agreement, they are entirely consistent, and they do not violate in their union any of the Code requirements. The question of damages or relief to be granted is unimportant in the consideration of this subject, as they are ancillary to the gist of the actions. As was said in Mahler v. Schmidt, 43 Hun, at page 514:

"The test is whether or not the parties joined in the suit have one connected interest centering in the point in issue as the cause, or one common point of litigation. If so, unconnected parties may be joined, even where different relief is sought against them."

In the many suits in equity brought to recover for continuous trespasses, and which are allowed to prevent a multiplicity of actions at law, all parties interested in the subject of the action, and who may be affected by the decree, are proper parties, although the damages accruing to each are not identical. In Shepard v. Railroad Co., 117 N. Y. 442, 23 N. E. 30, the court say, at page 448, 117 N. Y., and page 31, 23 N. E.:

"Although property owners have a remedy at law for an intrusion upon their rights, yet, as the trespass is continuous in its nature, they can invoke the restraining power of a court of equity in their behalf in order to prevent a multiplicity of suits, and they can recover the damages they have sustained as incidental to the granting of the equitable relief."

And again, on the succeeding page (page 449, 117 N. Y., and page 31, 23 N. E.):

"With the object of doing complete justice to all persons interested, if the essential relief to be granted by way of damages for the past injuries affects other parties than the present owners of the fee, is there any reason why those other parties should not be brought into the action? I see none, where the parties so joined derive their rights of action from the same source, for the injury to the same property rights, and have a common interest in their enforcement. The equitable principle in the administration of justice demands the presence of all parties where the decree of the court can affect and bind, and these defendants cannot be prejudiced by the application of this principle."

Of like purport are Woodworth v. Railroad Co., 29 App. Div. 1, 51 N. Y. Supp. 323; Henderson v. Railroad Co., 78 N. Y. 430. In Lamming v. Galusha, 135 N. Y. 239, 31 N. E. 1024, the action was brought to prevent the maintenance of a nuisance in operating a street railroad on a public highway, seeking injunctive relief, and special damages to real property, and, in addition thereto, damages for a personal injury sustained from the operation of the road, Here was a union of a suit in equity with a distinctive action at law, and perhaps subject to the operation of a different statute of limitations,

and yet arising out of the same transaction; and they were held not to be incompatible. The court say, at page 244, 135 N. Y., and page 1025, 31 N. E.:

"But they both proceeded in a general sense from the same wrong,—the unlawful obstruction of the highway by the defendant,—and they were all, we think, transactions connected with the same subject of action, within the meaning of section 483, and may properly be redressed in a single action. This conclusion is in harmony with the general principle of equity jurisprudence, which aims at complete and final relief in a single action in respect of all matters between the same parties growing out of the same general transaction."

See, also, Smith v. Schulting, 14 Hun, 52, relied upon by the special term, which is a case akin to this; and Lattin v. McCarty, 41 N. Y. 107; Taylor v. Marble Co., 83 Hun, 30, 31 N. Y. Supp. 513.

A court of equity may always make the relief fit the emergencies of the case, even though nothing but a judgment for money follows. Baily v. Hornthal, 154 N. Y. 648–661, 49 N. E. 56. Before the ultimate rights of the parties in this action can be arrived at, an accounting must be had, and that is true as to both funds. The defendant bears the same trust relation to the plaintiff in its possession of both funds, and that relation is fixed by the agreement. Unless this action can be maintained, there is likely to be a multitude of actions at law, each based upon precisely the same state of facts as in this case. To obviate difficulties of this kind was one of the paramount reasons for permitting the uniting of causes of action of one suit, and that object should be made effectual as far as practicable.

The interlocutory judgment should be affirmed, with costs to the plaintiff, and the defendant permitted to answer upon the payment of the costs of this appeal. So ordered. All concur.