John A. Dunscombe and C. O. Gallagher v. M. A.
Smith, as Liquidator of Stuart Bank & Trust Company,
as Trustee of Depositors Trust; W. V. Knott, as State
Treasurer; Chicago Investment Co., R. L. Wall, R. S.
Spicer, R. I. Hamrick, W. A. Palmer and Fred Hilder-
brand, Constituting Board of County Commissioners for
Martin County, and as Trustees for Martin County Vault
Bonds and Martin County Highway Improvement Bonds.

190 So. 796
Division B
Opinion Filed July 25, 1939
Rehearing Denied August 1, 1939

*Carroll Dunscombe,* for Appellants;

*Smith & Kanner,* Attorneys for Appellee, M. A. Smith, Liquidator; *Evans Crary,* Attorney for Board of County Commissioners; *George Couper Gibbs,* Attorney General, and *John L. Graham,* Attorneys for W. V. Knott, State Treasurer; *Harold B. Spact,* Attorney for Defendant, Chicago Investment Company, for Appellees.

CHAPMAN, J.—This case is here for the second time. Its first appearance is reported in 127 Fla. 797, 174 So. 38. It is a class suit brought in behalf of all persons who were depositors in the Stuart Bank & Trust Company at the time of its first closing. It was originally brought to enforce a trust under the terms of a freezing agreement which permitted the bank to reopen. After the going down of the mandate, counsel for the respective parties entered into a stipulation in which it was recited that the Stuart Bank & Trust Company had been completely liquidated and

$5,900.00 was in hand applicable to the claims of the depositors under the freezing agreement, and provided further that the assets should be sold at public auction to the highest cash bidder· and the moneys realized therefrom paid and distributed among the depositors pro rata as their interests appeared under the freezing agreement.

The material portions of the stipulation are, viz.:

"IT IS HEREBY AGREED AND STIPULATED by and between all of the parties involved in this suit as follows:

"I. That Stuart Bank & Trust Company, a Florida banking corporation, has been completely liquidated, except for the disposal of the cash now on hand, and certain assets deposited and set aside for the benefit of depositors under that certain freezing agreement made in order to enable said Bank to reopen, after its first closing in the year 1926.

· "II. That there is now in the hands of the said Defendant the sum of approximately Fifty-nine Hundred and no/100 ($5,900) Dollars in cash applicable to the claims of those Depositors under the said freezing agreement, together with the above described undisposed of assets.

"III. That the assets hereinabove referred to should be sold ·promptly at public auction to the highest cash bidder.

"IV. That the cash now on hand, and such sums as may be realized from the sale of the aforesaid assets, should be paid and distributed to the beneficiaries entitled to be paid under said freezing agreement, pro rata as their interests may appear.

"V. That any beneficiary may bid at such sale for the undisposed of assets, and if such beneficiary shall be the highest bidder, he may apply such as he may be entitled to on his said bid in lieu of cash, and shall pay the balance due upon said bid in cash to the said Liquidator.

"VI. That the defendant shall retain out of the funds

herein mentioned such sums as may be necessary to meet the costs and expenses of this proceeding, and the administration of the funds herein involved, and the closing out of the affairs of said Bank.

"VII. That in the event the counsel for plaintiffs is entitled to any compensation for his services herein, such matter is left with the court for determination.

"VIII. That the court make and enter a decree in accordance with this stipulation, which decree shall be conclusive upon the parties hereto."

The cause was submitted to the court upon the pleadings and the aforesaid stipulation, and on the 2nd day of February, 1938, the Honorable Frank A. Smith, circuit judge, made and entered a decree approving and confirming the terms of the stipulation, and the material portions of the decree are, viz.:

"This cause came on to be heard upon the pleadings and the stipulation entered into between all of the parties involved herein, and thereupon, upon consideration thereof,

"IT IS ORDERED, ADJUDGED AND DECREED, as follows:

"I. That the terms of said stipulation are hereby approved and confirmed.

"II. That the assets referred to in said stipulation shall be sold and promptly at public auction to the highest cash bidder, and that any beneficiary under the said freezing agreement involved herein may bid at such sale for the undisposed-of assets, and that if such beneficiary shall be the highest bidder, he may apply the amount to which he shall be entitled under his claim on his said bid, in lieu of cash, and then shall pay the balance due upon said bid in cash to the said defendants, liquidator.

"III. That the cash now in the hands of said defendant, approximately in the amount of Fifty-nine Hundred and

no/100 ($5,900.00) dollars, and such sums as may be realized from the sale of the assets described in the stipulation, shall be paid and distributed to the beneficiaries entitled to be paid under said freezing agreement, pro rata, as their interests may appear.

"IV. That the defendant shall first pay out of the funds herein mentioned such sums as may be necessary to discharge the costs and expense of this proceeding; the administration of the funds herein involved, and the closing out of the affairs of said bank.

"V. That the defendant shall also pay out of the funds herein mentioned to the counsel for plaintiffs $500.00 as his compensation for his services herein rendered."

On the 31st day of March, 1938, in behalf of the original depositors, the plaintiff filed an amended bill of complaint in which the original defendant M. A. Smith, liquidator of the Stuart Bank & Trust Company, was a party, and additional parties thereto were Chicago Investment Company, the Board of County Commissioners of Martin County, and W. V. Knott, State Treasurer. The amended bill so filed adopted all the allegations of the prior bill of complaint and exhibits attached thereto, and averred that all the assets the liquidator held in trust at the time of the signing of the stipulation and the decree, *supra,* were $5,900.00 and uncollected notes, and after the net proceeds of the sale of the assets of the Stuart Bank & Trust Company were credited against the amount due the depositors there remained due to the said depositors $84,000.00.

The amended bill alleges that on September 24, 1938, there was a large sum of money collected by the liquidator, and the Board of County Commissioners of Martin County exacted of the Stuart Bank & Trust Company security for

moneys of the county then on deposit with the bank. The bank, securing the deposits, took $55,000.00 of its trust funds and deposited same in the Barnett National Bank of Jacksonville and received certificates of deposit and deposited the same with the State Treasurer as security to cover losses of the public deposits, if any. These certificates were subsequently sold and the moneys of Martin County previously deposited with the Stuart Bank & Trust Company returned to the county. It is alleged that the certificates of deposit were the property of the depositors and that they had a claim thereto, which in law amounted to a priority to the claim of the Board of County Commissioners of Martin County.

It is alleged that $25,000.00 was deposited by the Stuart Bank & Trust Company under Section 6131 C. G. L., with the State Treasurer and likewise the depositors, as a matter of law, were entitled to said money.

It is further charged that the remaining assets of the Stuart Bank & Trust Company sold at the liquidator's sale are likewise the property of the depositors and that the Chicago Investment Company should be required to account therefor.

The prayer of the bill seeks a decree against W. V. Knott, State Treasurer, requiring him to deliver the securities in the sum of $25,000.00 to the liquidator for the use and benefit of the depositors, and that the Board of County Commissioners of Martin County be required to account for and pay over to the liquidator the certificates of deposit delivered by the Stuart Bank & Trust Company to the board to secure the payment of the deposit with the bank of the public moneys, the property of Martin County, and that the Chicago Investment Company be required to ac-

count for certain securities bought by it at the liquidator's sale.

The Honorable W. V. Knott, State Treasurer, filed an answer to the amended bill of complaint in which he recited that on the 30th day of July, 1934, he returned or delivered to M. A. Smith, as liquidator of the Stuart Bank & Trust Company, the securities deposited with him. The Chicago Investment Corporation answered the amended bill of complaint and admitted the purchase of the remaining assets of the Stuart Bank & Trust Company and that the said sale to it was confirmed by an order of the court.

M. A. Smith, as liquidator, and the Board of County Commissioners for Martin County filed separate motions to dismiss the amended bill of complaint, and one of the grounds of each motion was that the amended bill of complaint did not contain equity.

On the 18th day of July, 1938, an order was made by the Honorable Elwyn Thomas, Circuit Judge, sustaining the motion to dismiss the amended bill of complaint and an appeal has been perfected therefrom to this Court.

It is agreed that the suit at bar is a class suit, brought on behalf of all those persons who were depositors with the Stuart Bank & Trust Company. While the original suit was against the liquidator, but the amended bill brought in several additional defendants. It is asserted by counsel for appellant that the stipulation and decree, *supra,* was for the purpose of distributing as among the depositors such assets as were available in the possession of the liquidator and a credit for such amount so distributed should be allowed against the original amount due the depositors, leaving a balance due in the sum of $84,000.00.

The stipulation here is not attacked in the amended bill of complaint on the grounds of fraud, mistake, collusion

or undue influence but that it provides only, as contended in the bill, for partial payments to the depositors and that the decree predicated on the stipulation is not final but interlocutory or a step in the cause.

One of the first questions to be decided is whether or not the decree, *supra,* is interlocutory or final. This Court has defined interlocutory orders or decrees as such as are given in the middle of a cause upon some plea, proceeding or default which is only intermediate and does not finally determine or complete the suit. A decree is final which decides the right to the property in contest and directs it to be delivered by the defendant to the complainant, or directs it to be sold, or directs the defendant to pay a certain sum of money to the complainant and the complainant is entitled to have such decree carried immediately into execution, but where anything remains to be done which may be the subject of later exception or appeal, so that the whole matter in controversy is not disposed of, the decree is not regarded as final. See Hirsch Co. v. Scott, 87 Fla. 336, 100 So. 157; Heverle v. Rasmussen, 103 Fla. 76, 137 So. 259.

This Court is committed to the rule that it not only approves but favors stipulations and agreements on the part of litigants and counsel designed to simplify, shorten or settle litigation and save costs to the parties, and the time of the Court, and when such stipulations or agreements are entered into between parties litigant or their counsel, the same should be enforced by the court, unless good cause is shown to the contrary. In order to obtain relief against stipulations, the regular course is not to ignore or attempt to evade it, but to make a seasonable and affirmative application by formal motion to the court, on notice and supported by affidavit for its withdrawal or revocation. See Esch v. Forster, 123 Fla. 905, 168 So. 229.

We have considered the stipulation and decree, *supra,* and hold that the stipulations are binding on the parties and that the decree entered by the lower court thereon is in contemplation of law a final decree. .

Having reached the conclusion that the plaintiff in the original suit was bound by the stipulations and final decree, *supra,* the question arising now is whether or not the plaintiff is bound by the terms of the stipulation and decree, and, if so, is he precluded from prosecuting the amended bill of complaint against additional defendants? When the case was before the Court the first time it was agreed that the suit was brought in behalf of all those persons who were depositors of the bank at the time of the first closing. The amended bill of complaint "adopts all the stipulations and exhibits attached to their prior complaint filed in this cause and further show." It is clear that the suit at bar is in behalf of the depositors of the bank prior to its first closing. When the question is one of common or general interest to many persons constituting a class so numerous as to make it impractical to bring them all before the court, one or more may sue or defend for the whole. See Meier v. Johnston, 110 Fla. 374, 149 So. 185.

We fail to find error in the record. The decree appealed . from is hereby affirmed.

WHITFIELD, P. J., and BROWN, J., concur.

TERRELL, C. J., concurs in opinion and judgment.

THOMAS, J., disqualified.

Justice BUFORD not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.