TOWN OF DAVENPORT, a Municipal Corporation of the State of Florida, and G. H. GEORGE v. J. W. HUGHES, *et al.*

2 So. (2nd) 851
En Banc
Opinion Filed May 13, 1941
Rehearing Denied June 27, 1941

*Robert T. Dewell,* for Appellant Town of Davenport and *Wylie & Warren, D. C. Hull* and *Hull, Landis & Whitehair,* for Appellant G. H. George;

*Milam, McIlvaine & Milam* for Appellees.

BUFORD, J.—This is the second appearance of this case here. See Hughes v. Town of Davenport, 141 Fla. 382, 193 Sou. 291, in which we held:

"Proceedings to validate bonds issued by a town and a judgment in the proceedings did not preclude a taxpayer from asserting that his property was unconstitutionally included in boundaries of town by Act of Legislature, since such issue could not be tried in validation suit.

"Judgment in a mandamus action instituted by a

bondholder requiring officials of a town to levy taxes to service bonds issued by the town does not preclude a landowner from contesting validity of assessment ordered against his property, since landowner is not a party to mandamus proceeding.

"Where special statute under which Legislature attempted to include certain land in town was unconstitutional insofar as it sought to include land within boundaries of town because land would not receive any municipal benefits, statute did not confer upon the town either *de jure* or *de facto* jurisdiction to levy taxes on the land to pay municipal bonds issued subsequent to passage of statute and prior to judgment in quo warranto proceeding ousting lands from boundaries of town."

That opinion and judgment became the law of the case. After the case was remanded to the lower court answers were filed by the defendants George and Town of Davenport. Order of reference was made; testimony was taken and final decree was entered which in effect holds, upon findings of fact, that the lands involved when attempted to be included in the Town of Davenport were not susceptible of receiving any municipal benefits and that, therefore, the statute did not confer upon the Town either *de jure* or *de facto* jurisdiction to levy taxes on the lands to pay municipal bonds subsequent to the passage of the statute and prior to the judgment in quo warranto proceedings ousting such lands from the jurisdiction of the municipality.

The record shows that in 1917 the Town of Davenport was created by legislative Act and comprised 720 acres. In 1925 the Legislature passed a special Act extending the town limits to include an additional

880 acres. Thereafter, the Town validated and sold seven bond issues for various municipal improvements.

In 1932 the Attorney General joined by various land-owners instituted a proceeding in quo warranto to exclude from the town limits all territory added by the 1925 Act, and a judgment of ouster was entered excluding 720 acres upon the ground, in effect, that such territory illegally added to the municipality lands not needed or suited to municipal purposes and were, therefore, excluded. No bondholders were made parties defendant to the quo warranto action.

In 1938 G. H. George obtained a peremptory writ requiring the levy of taxes on all property included in the Town by the 1925 Act for the payment of certain bonds held by him. The Town then levied debt service taxes on these lands which were previously excluded by the ouster judgment, and plaintiffs brought this action to enjoin such levy and decree that their lands be not subject to taxes for debt service. The chancellor granted the above relief to plaintiffs.

The parties plaintiff (appellees) are: J. W. Hughes, who purchased ten acres in the excluded area one-fourth mile west of present limits, in 1937, from a Dr. Charles A. Lauffer; Goldie A. Trauger (substituted for H. B. Trauger, deceased) who owns ten acres in the area abutting present limits, obtained from one J. D. Louis in 1933; P. G. Howe, who purchased one-half interest in twenty acres in excluded area in 1937; Wilson & Toomer Fertilizer Company, who foreclosed mortgage on some 5,000 acres owned by Holly Hill Grove and Fruit Co., and purchased property at the Master's sale. The defendants (appellants) are: The Town; and G. H. George, who holds bonds of three of the issues.

The principal issue is whether or not the plaintiff's specific properties have received or are capable of receiving municipal benefits.

The evidence shows that the lands involved are solely agricultural and chiefly devoted to citrus. (Defendant's witness, tr. 217-218.) The record shows there were only two farm houses on this property in 1925; today there are three, with six inhabitants of the area. The record further shows that no municipal utilities were provided by the Town for this area, except water; that is, the electricity and telephone service is furnished by private resources, more or less, by contract between consumer and supplier without distinction as to location; the Town furnishes no police or fire protection; there are no sidewalks or paving in the area; the clay roads existing were built by the individual grove owners; there is no sanitary protection or garbage collection.

Water, however, is supplied by the Town. It has a water tank, pumping station, etc., but supplies water to persons residing beyond Town limits if they pay for installation. This is the way the plaintiffs received their water, although the Town has refunded the cost out of water used. It does appear that a fire hydrant is located on the Wilson & Toomer property. In this connection, the question of insurance rates was argued. It is true the rates increased when the area was excluded from the Town limits, but the insuranceman inferred that that was only one factor involved in figuring the risk; and the increase was slight.

However, because the Town has stores, churches, library, etc., because its business is principally agricultural, and because the plaintiffs' properties are all

from three-fourths mile to two miles from the center of Town, the defendants contend the plaintiffs are receiving benefits—due to their using the streets on trips to Town, easy accessibility. But it clearly appears that no money derived from the sale of municipal bonds was expended in the area excluded unless it was for water.

Another question presented is: Are plaintiffs, the Wilson & Toomer Company, estopped by acts of predecessors in title? It is shown that the Holly Hill Grove & Fruit Co. was very active in developing this section, and that many of its employees served on the Town Council between 1920 and 1930. Because the directors of this company and of Wilson & Toomer Co. were in some instances the same, defendants have attempted to show an estoppel against Wilson & Toomer Co. because of the activity of the Holly Hill Grove & Fruit Company employees in securing the extension of the Town limits in 1925 in order to issue the bonds.

The evidence shows that one Frank Crisp was the dominating power in the Holly Hill Grove & Fruit Co., but no connection is shown between him and Wilson & Toomer Co. other than that he had previously worked for them; nor does it appear what interest, if any, Wilson & Toomer Co. had in the stock of Holly Hill Grove & Fruit Co.; nor is it shown that any officer of Wilson & Toomer ever served on The Town Council (see decree, tr. 398-400).

The plaintiffs herein own only about one-half of the property excluded by ouster decree. This decree (the one on appeal) ordered the injunction be extended to all lands included in prior ouster judgment. This presents the question: Is this proper, or should the

remaining property owners have joined as parties plaintiff in order to receive the benefits?

Defendant G. H. George, is holder of only three of the seven bond issues. Decree herein restrained all bondholders from instituting further suits to subject these lands to debt service. This presents the question: Should holders of the remaining four issues of bonds have been brought in as parties defendant, or is the single bondholder an adequate representative to make the decree effective to restrain all bondholders?

It appears from the record that there were seven issues of bonds by the City of Davenport. It is alleged in the bill that there are numerous holders of bearer bonds who would be difficult to locate. The defendant G. H. George owned part of three of these issues. In his answer he denied that it would be proper to allow this action to proceed as a class suit because owners of stock of the issues other than the three issues of which he owns a part are not before the court. The court in its final decree treats the suit as a class suit, which is the basis for the 20th assignment of error. This is proper under the 1931 Chancery Act, Chapter 14658, Sec. 14, Laws of 1931, as follows:

"Class suits: Effcet of.—When the question is one of common or general interest to many persons constituting a class so numerous as to make it impracticable to bring them all before the court, one or more may sue or defend for the whole."

It is fundamental that by so disposing of the matter in the final decree, the court rules that the suit was properly a class suit, it being so alleged in the bill and denied in the answer. See McCarthy's Chancery Act, annotation page 31.

The chancellor found in his final decree that the case was "very ably argued, orally and by briefs." He was satisfied that the representation was fair and adequate. Since the question primarily involved was whether or not the lands involved in the judgment of ouster could be taxed for the payment of municipal bonds at the instance of the bondholder, and it appearing that all seven issues of bonds were for municipal purposes, and improvements, it was proper to enjoin all holders of said municipal bonds from seeking to have a tax levied against the excluded lands, all bondholders having a common and general interest in the subject matter and being adequately represented by representatives of the class and the grounds of the alleged inclusion of the added lands in the Town being common and conclusive as to all bondholders on the showing made by the record brought here on this appeal.

The chancellor also found that the "lands of the plaintiffs constitute the major portion of the lands involved in the quo warranto proceedings and described in the said final judgment of ouster (rendered at the instance of the Attorney General of the State) and the remainder of said lands described in said judgment embrace irregular parcels and separated from the former town limits" and extended the injunction to "all lands included in said judgment of ouster." This holding is the basis for the 21st assignment of error.

It appears from the record that the owners of all lands included in the said judgment of ouster, although having separate and individual rights of action to enjoin the levying of a tax against their land upon suit by holders of municipal bonds, the rights arise from a common interest, are governed by the same legal

principle and involve similar facts. The holders of all municipal bonds are similarly situated as parties defendant. Under these circumstances, representation of all, both plaintiffs and defendants, by certain parties in interest who adequately assert and protect the interest of all to the satisfaction of the court, is permitted by Section 14 of the 1931 Chancery Act, *supra*. See Meier v. Johnson, 110 Fla. 374, 149, Sou. 185; Olds v. Alvord, 133 Fla. 345, 183 Sou. 711, 713; Allen v. Avondale Co., 135 Fla. 6, 185 Sou. 137; Dunscombe v. Smith, 139 Fla. 497, 190 Sou. 796; Kooman's Florida Chancery Pleading and Practice, page 113.

The fifth question is stated by appellant as follows:

"Where properties are included within the corporate limits of a municipality by a legislative Act, and where the municipality thereupon issues bonds pledging taxes upon all property within such municipality for their payment, and where such properties are later excluded from the corporate limits of the municipality in quo warranto proceedings in which none of the holders of such bonds were made parties, and where a holder of such bonds thereafter institutes a proceeding which results in the issuance of a peremptory writ of mandamus requiring the municipality to levy taxes on all taxable property that was located within the limits of the municipality at the time of the issuance of such bonds, may persons voluntarily purchasing such properties in the open market successfully invoke the aid of a court of equity to enjoin the collection of such taxes, and may the plaintiffs in such injunction suit avoid the consequences of notice of the bondholder's rights on the ground that the bondholder had not instituted his mandamus suit until after the plaintiffs in

238

the injunction suit had acquired title to their respective properties?"

We must hold that appellants' contention is not tenable because the appellees had the right to rely upon the law as it existed and was not bound by a void legislative Act. See Hughes, *et al.*, v. Town of Davenport, *supra*.

The contentions presented by the sixth and seventh questions have been fully answered by the opinion and judgment of this Court in the case of Hughes, *et al.*, v. Town of Davenport, *supra*, and heretofore in this opinion.

For the reasons stated, the decree is affirmed.

So ordered.

BROWN, C. J., WHITFIELD, TERRELL, CHAPMAN, THOMAS and ADAMS, J. J., concur.