340 So.2d 463 (1976)
E.J. FRANKEL et al., D/B/a Roney Plaza Apartments, Petitioners,
v.
CITY OF MIAMI BEACH, Respondent.
No. 45932.
Supreme Court of Florida.
September 23, 1976.
Rehearing Denied January 10, 1977.
*464 Irving B. Levenson of Sibley, Giblin, Levenson & Ward, Miami Beach, for petitioners.
Joseph A. Wanick, City Atty., and Lee H. Schillinger, Chief Asst. City Atty., for respondent.
PER CURIAM.
We have before us a petition for a writ of certiorari which alleges that the decision of the District Court of Appeal, Third District, in Frankel v. City of Miami Beach, 296 So.2d 605 (Fla.App.3d 1974) conflicts with this Court's decision in Tenney v. City of Miami Beach, 152 Fla. 126, 11 So.2d 188 (1942). We have jurisdiction pursuant to Article V, § 3(b)(3), Fla. Const.
The pertinent facts are as follows.
Petitioners, owners and operators of the Roney Plaza Apartments in Miami Beach, brought suit as a class action on behalf of themselves and all other consumers of water in Miami Beach, for a declaratory decree (judgment) against the City of Miami Beach as to the effective date of an ordinance increasing the water rate. Ordinance No. 1936 was passed and adopted by the City of Miami Beach on September 25, 1972, increasing the water rate charged all consumers by eight cents per thousand gallons on all billings effective October 1, 1972. This actually increased the rate at some time prior to October 1, 1972. Petitioners alleged that the City Charter (Chapter 45-20) prevented this increase from becoming binding until Petitioners and all other consumers were given thirty days written notice of the increase. Because the statements sent to water users on October 1st constituted the first written notice given of the increase, Petitioners contend that the increased rate could not become effective until thirty days thereafter. Inasmuch as, by its billing at the increased rate on October 1, the City maintains that there is an earlier effective date, there exists a genuine controversy justifying an action for declaratory judgment. The Circuit Court granted respondent's motion to dismiss and the Third District affirmed upon the authority of its decisions in Shell Oil Co. v. State, 295 So.2d 648 (Fla.App.3d 1974); Federated Department Stores, Inc. v. Pasco, 275 So.2d 46 (Fla.App.3d 1973); Curtis Publishing Co. v. Bader, 266 So.2d 78 (Fla.App.3d 1972), and the Supreme Court's decision in Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Judge Pearson dissented on the grounds that the Frankel majority's affirmance of the trial court's dismissal of the class action was in conflict with this Court's decision in Tenney v. City of Miami Beach, supra. We agree. Autrey v. Carroll, 240 So.2d 474 (Fla. 1970). The Third District's decision is also in conflict with this Court's decisions in City of Miami v. Keton, 115 So.2d 547 (Fla. 1959); Town of Davenport v. Hughes, 147 Fla. 228, 2 So.2d 851 (1941); State Road Department v. Bender, 147 Fla. 15, 2 So.2d 298 (1941); Allen v. Avondale Co., 135 Fla. 6, 185 So. 137 (1938); Olds v. Alvord, 133 Fla. 345, 183 So. 711 (1938); Dunscombe v. Smith, 127 Fla. 797, 174 So. 38 (1937). Additionally, conflict certiorari jurisdiction is found in that the Third District in deciding Shell Oil Co. v. State; Pasco, and Bader, supra, enunciated a rule of law which conflicted with the rule this Court formulated in Osceola Groves v. Wiley, 78 So.2d 700 (Fla. 1955) and Nielsen v. City of Sarasota, 117 So.2d 731 (Fla. 1960). Moreover, the Third District in deciding Frankel and the above cases created a conflict by purportedly accepting the Osceola Groves decision as controlling *465 precedent in cases which materially varied with Osceola Groves, supra. McBurnette v. Playground Equipment Corp., 137 So.2d 563 (Fla. 1962).
Florida Rule of Civil Procedure 1.220 provides that class actions may be maintained
"When the question is one of common or general interest to many persons constituting a class so numerous as to make it impracticable to bring them all before the court, one or more may sue or defend for the whole."
In Harrell v. Hess Oil and Chemical Corp., 287 So.2d 291 (Fla. 1973), this Court enumerated the prerequisites which a complaint in a class action must contain in order to withstand a motion to dismiss, these being that the complaint must:
"(1) show the necessity for bringing the action as a class suit;
"(2) show plaintiff's right to represent the class;
"(3) allege that plaintiff brought suit on behalf of himself and all others similarly situated;
"(4) allege the existence of a class, described with some degree of certainty;
"(5) allege that the members of the class were so numerous as to make it impracticable to bring them all before the court;
"(6) make it clear that plaintiff adequately represents the class; and
"(7) show that the interests of the plaintiff were co-extensive (common interest-community of interest) with the interests of other members of the class." Harrell, supra, at 293-94. (Explanation and emphasis added)
These seven requirements have been held to have been met as to plaintiff classes in numerous cases, e.g., City of Miami v. Keton, 115 So.2d 547 (Fla. 1959); State ex rel. Bailey v. Gomez, 152 Fla. 355, 11 So.2d 569 (1943); Tenney v. City of Miami Beach, 152 Fla. 126, 11 So.2d 188 (1942); City of Miami Beach v. Tenney, 150 Fla. 241, 7 So.2d 136 (1942); Town of Davenport v. Hughes, 147 Fla. 228, 2 So.2d 851 (1941); State Road Department v. Bender, 147 Fla. 15, 2 So.2d 298 (1941); Knowles v. Central Allapattae Properties, 145 Fla. 123, 198 So. 819 (1940); Dunscombe v. Smith, 139 Fla. 497, 190 So. 796 (1939); Allen v. Avondale Co., 135 Fla. 6, 185 So. 137 (1938); Olds v. Alvord, 133 Fla. 345, 183 So. 711 (1938); Meier v. Johnston, 110 Fla. 374, 149 So. 185 (1933); Pinellas County v. Town of Belleair Shore, 180 So.2d 510 (Fla.App.2d 1965); and Port Royal, Inc. v. Conboy, 154 So.2d 734 (Fla.App.2d 1965). Similarly, these requirements have been held to be satisfied as to a single plaintiff suing the members of unincorporated associations as defendant classes in Ross v. Gerung, 69 So.2d 650 (Fla. 1954) and State ex rel. Vile v. Shaw, 52 So.2d 676 (Fla. 1951), whereas the complaints in "plaintiff class actions" were found to be legally insufficient in Peters v. Meeks, 163 So.2d 753 (Fla. 1964) and Larson v. Warren, 132 So.2d 177 (Fla. 1961), and legally insufficient as to "defendant classes" in City of Lakeland v. Chase National Co., 159 Fla. 783, 32 So.2d 833 (1947).
The decisions of this Court cited above have construed Rule 1.220 and its predecessor[1] as allowing class actions to be maintained in Frankel type situations. In Allen v. Avondale Co., supra, the plaintiff brought a class action challenging the continued enforcement of a restrictive covenant contained in the deeds of each purchaser of subdivision lots. This Court upheld the trial court's ruling that a class action could be maintained even though the rights of each purchaser were separate, and each purchaser sought a separate award of money damages. In Dunscombe v. Smith, supra, we held that one or more bank depositors could maintain a class action on behalf of other depositors who were also beneficiaries to enforce a trust. Even though each beneficiary had a separate and distinct interest from the others and did not have a pecuniary interest in the proceeds that each individual beneficiary was entitled to, we held that the suit presented a question of common and general interest to the class. In Meier v. Johnston, supra, this Court held that one or more members of an *466 unincorporated association can maintain a class action on behalf of the organization and its membership. Similarly, in Town of Davenport v. Hughes, supra, the trial court allowed one property owner to maintain a class action on behalf of all the property owners affected to enjoin the collection of taxes for city bonds. Even though the rights of each property owner were separate, we held that a class action was proper because there were common questions of law and fact. In City of Miami Beach v. Tenney, supra, this Court affirmed the trial court's order allowing a class action to be maintained by two property owners who challenged the legality of a special assessment imposed on the lots of several hundred property owners. Again, we held that notwithstanding the separate rights of each property owner that there was a common question of law and fact. In the companion case of Tenney v. City of Miami Beach, 152 Fla. 126, 11 So.2d 188 (1942), Mr. Justice Terrell, for the Court, succinctly summarized the purpose of class actions when he reasoned that
"The very purpose of a class suit is to save a multiplicity of suits, to reduce the expense of litigation, to make legal processes more effective and expeditious, and to make available a remedy that would not otherwise exist. The Chancellor had jurisdiction of the parties to the cause and the subject matter of the litigation. When this is the case, those of the class for whose benefit the suit is brought are in effect parties plaintiff. Wheelock v. First Presbyterian Church of Los Angeles, 119 Cal. 477, 51 P. 841; Whiting v. Elmira Industrial Ass'n, 45 App.Div. 349, 61 N.Y.S. 27. If this is not the case and the subject matter of the litigation cannot be held to respond to its necessary cost, then the advantage to be derived from a class suit is nullified. To have required 232 separate suits here would have been prohibitive and ridiculous and would have deprived many of a remedy." Tenney v. City of Miami Beach, supra, 11 So.2d at 189.
Subsequently, in City of Miami v. Keton, supra, we affirmed the trial court which allowed two plaintiffs to represent 240,000 persons in challenging the authority of the City of Miami to impose fines under its traffic ordinance. This Court held, that although each person had a separate fine and there was no common or joint right, that a class action was proper since the question of law was common to the class.
In deciding Frankel, the Third District did not follow the above cases, but erroneously relied upon its earlier decisions in Shell Oil Co. v. State; Pasco, and Bader, supra, which in turn represent an erroneous construction of this Court's decision in Osceola Groves v. Wiley, supra. Nielsen v. City of Sarasota, supra; McBurnette v. Playground Equipment Corp., supra.[2]
In Osceola Groves, supra, this Court enunciated a special rule for class actions wherein fraud is alleged. Therein, the material allegations of the complaint and facts were as follows:
"Defendant Osceola Groves, Inc. is the alter ego of the defendant C.J. Gonterman and was organized by him and used for the purpose of defrauding plaintiffs and others similarly situated. The corporation subdivided about 394 acres of land into one acre units and sold these units for $1,000 each to numerous persons each of whom signed similar contracts of sale and lease agreements. Each plaintiff is the owner of units purchased under this scheme by contract from the corporation. Plaintiffs bring the suit as a class suit on behalf of themselves and all others similarly situated, and `Said persons constitute a class having a common or general interest in the subject matter of this suit, and they are so numerous as to make it impracticable to bring them all before the court, and for that reason, the plaintiffs sue on behalf of all, as allowed by the *467 1954 Florida Rules of Civil Procedure, rule 3.6.'
"In the sale contracts of the units of land the corporation promised the plaintiffs to plant each tract with citrus trees, to replace any trees that may die in planting, to cultivate and maintain the trees, and to provide for marketing of the crops. In ninety-nine year leases executed simultaneously with the contract of purchase, the plaintiffs each agreed that the land units should be under control of the defendant corporation for ninety-nine years. In these leases the corporation agreed to maintain the units in keeping with good husbandry and to market the crops, to keep separate accounts for each unit and to make annual reports, to pay to the owner of each unit `80% of the earnings of said property' and to retain `20% of the earnings' for its services in connection with the land. Defendants abided by the agreements until about 1948. Thereafter defendants breached the so-called lease agreements in that they fraudulently operated under the agreements for their own benefits and `saw to it that the expense of maintenance arose from approximately $35.00 per acre unit in 1947 to more than $175.00 per acre unit in 1953,' and they `so manipulated the costs of maintenance and operation of each unit that each year the cost of operation and maintenance was nearly equal to or exceeded the return from each unit under a scheme to keep the expenses increasing in order to retain all of the income from the land,' and they wrongfully, with intent to defraud, took returns from the land which should have gone to plaintiffs. Defendants have wrongfully failed to account for and have withheld from plaintiffs and others similarly situated monies due them in an amount of about $800,000.
"Plaintiffs prayed for an accounting, for an order enjoining disposition of corporate assets, for cancellation of the ninety-nine year lease contracts, for a receiver to take over operation of the groves, and for an order enjoining defendants from doing any more work on the properties involved in the litigation.
"Attached to and made a part of the complaint are copies of the contract of sale and the lease agreement entered into between the corporation and plaintiff Verna B. Wiley. Both of these instruments bear the date December 7, 1943. The complaint does not contain copies of the contract and lease agreement alleged to have been entered into by the plaintiff Bessie E. Duncan." Osceola Groves, supra, at 701-02.
The allegation of fraud in a class action complaint presented this Court with a question of first impression. In deciding Osceola Groves, we considered the decisions of our sister states and those of the Federal courts. We observed that:
"With reference to the subject of similar frauds practiced on various persons as the basis of representative suit, in Note, 1938, 114 A.L.R. 1015, 1019, it is stated:
`Thus far, neither under existing codes nor under general rules of law, has a representative action to recover damages for similar frauds practiced on numerous persons been upheld. In general, the objections to such suits seem to be the same as those applying to representative suits to rescind for fraud; namely, that the demands of the various defrauded parties are not only legally distinct, but each depends upon its own facts, and that a material difference in facts may exist. Furthermore, a choice of remedies is ordinarily presented, and the plaintiff cannot know that other persons similarly situated will not elect to affirm the fraudulent transaction.'" Osceola Groves, supra, at 702.
In applying the above to the facts presented therein, we held that because of the numerous remedies and options available to each prospective plaintiff that it would cause an injustice to allow the suit to proceed as a class action. Specifically, we stated that
In the instant case we note particularly that each of the alleged numerous purchasers *468 of units of land acquired his interest under separate contracts with the defendant and it does not appear that in these contracts was any provision showing a cooperative enterprise or any showing that any purchaser had a pecuniary interest in any development of lands other than those covered by his own contract. Further the complaint shows that other alleged purchasers, if they have any cause of action against defendants, have a choice of remedies available to their individual selection and their rights of actions may be subject to separate and distinct defenses.
"One or two simple illustrations demonstrate conclusively that the facts alleged in the complaint below not only do not present a situation which is the subject of a class suit but that to allow it to proceed as a class suit could work great injustices upon many persons who were not subject to the processes of the court and could well result in depriving such persons of their property without due process of law. For example, it may well be that some of the purchasers have used the alleged losses occasioned by the actions of the sellers to their advantage in their income tax returns over a long period of time. The litigation could terminate in substantial liability for costs. Moreover, there may be many purchasers who are satisfied with their bargains whether the trees had ever been planted or, if planted, regardless of the costs of maintenance. There may be differences in every one of the many contracts involved of a nature that would result in the legal rights of the parties, in each instance being different." Osceola Groves, supra, at 702-03.
As it may be surmised from the above quoted passage, we held that in order to institute or defend a class action wherein fraud is alleged the members of the class must: 1) be engaged in a cooperative enterprise; 2) have a joint pecuniary interest; and 3) not have a choice of remedies which may be subject to separate and distinct defenses.
In enunciating the above rule, we relied primarily upon the Ninth Circuit's decision in Associated Almond Growers of Paso Robles v. Wymond, 42 F.2d 1 (9th Cir.1930) which was directly on point. At the time of our decision in Osceola Groves, supra; Associated Almond Growers, supra, represented the majority position of the Federal courts as to class actions wherein fraud was alleged. Baker v. Spokane Savings Bank (Smith v. Spokane Savings Bank), 71 F.2d 487 (9th Cir.1934); Associated Almond Growers, supra; Speed v. Transamerica Corp., 5 F.R.D. 56 (D.Del. 1945); Willcox v. Harriman Securities Corp., 10 F. Supp. 532 (S.D.N.Y. 1933); Gilbert v. Clark, 13 F.R.D. 498 (D.Mass. 1952). Subsequent to our adoption of the Federal rule in Osceola Groves, however, the Federal courts receded from that view, Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913 n. 5 (9th Cir.1964); Cherner v. Transitron Electronic Corp., 201 F. Supp. 934 (D.Mass. 1962); and adopted the exact opposite view. Green v. Wolf Corp., 406 F.2d 291 (2d Cir.1968), cert. den'd, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); Harris, supra; Vernon J. Rockler & Co. v. Graphic Enterprises, Inc., 52 F.R.D. 335 (D.C.Minn. 1971); Harris v. Jones, 41 F.R.D. 70 (D.Utah 1966); Fischer v. Kletz, 41 F.R.D. 377 (S.D.N.Y. 1966). Since the complaint in the instant case does not allege fraud, we have no occasion to consider the desirability of continued adherence to the fraud class action rule adopted in Osceola Groves, supra.
We must examine, however, the misapplication of the Osceola Groves fraud rule by the district courts to class actions wherein fraud has not been alleged since as noted above it was not our intent that the Osceola Groves "fraud rule" be given general application to class actions, e.g., Allen v. Avondale Co., supra; Dunscombe v. Smith, supra.
The district courts have correctly applied the Osceola Groves fraud class action rule in Costin v. Hargraves, 283 So.2d 375 (Fla. App.1st 1973); Equitable Life Assurance Society of United States v. Fuller, 275 So.2d 568 (Fla.App.3d 1973) and Hendler v. Rogers *469 House Condominium, Inc., 234 So.2d 128 (Fla.App.4th 1970). However, the district courts have misapplied this limited rule in numerous cases. The precedential origin of each of these can be traced back to the misapplication and incorrect interpretation of our decision in Osceola Groves, supra. The following chronological citations with explications shows how the district courts have misapplied this rule and have decided subsequent cases upon the authority of earlier erroneous decisions. Metropolitan Dade County v. Maddox, 242 So.2d 165 (Fla. App.3d 1971) (citing Osceola Groves); Wilson v. First National Bank of Miami Springs, 254 So.2d 362 (Fla.App.3d 1971) (citing Osceola Groves); John E. Withers Transfer and Storage Co. v. Overstreet, 254 So.2d 855 (Fla.App.3d 1971) (citing Osceola Groves); Curtis Publishing Co. v. Bader, 266 So.2d 78 (Fla.App.3d 1972) (citing Wilson which relied upon Osceola Groves); Daniels v. National Brands Tire Co., Inc., 270 So.2d 448 (Fla.App.3d 1972) (citing Osceola Groves and Wilson); Federated Department Stores, Inc. v. Pasco, 275 So.2d 46 (Fla.App.3d 1973) (citing Osceola Groves; Wilson and Daniels); Watnick v. Florida Commercial Banks, Inc., 275 So.2d 278 (Fla. App.3d 1973) (citing Osceola Groves and Wilson); Sams Winn-Dixie Stores, Inc., 294 So.2d 337 (Fla.App.3d 1974) (citing Osceola Groves; Wilson; Pasco and Watnick); Randall v. General Accident Fire and Life Assurance Corp., Ltd., 296 So.2d 61 (Fla. App.3d 1974) (citing Osceola Groves); Jackson v. Alterman Transport Lines, Inc., 301 So.2d 795 (Fla.App.3d 1974) (citing Watnick which relied upon Osceola Groves and Wilson and Pasco which relied upon Osceola Groves, Wilson and Daniels).
In none of the above foregoing "class action" decisions of the Third District was fraud alleged. Accordingly, the above decisions insofar as they apply the Osceola Groves fraud class action rule to class actions wherein fraud was not alleged are expressly overruled. We express no opinion, however, as to whether the class actions sought to be maintained in the above cases satisfied the requirements of Florida Rule of Civil Procedure 1.220. In satisfying the rule's requirement "more is required than the mere pleading the language of the statute". Osceola Groves v. Wiley, supra, at 702, citing City of Lakeland v. Chase National Co., supra, 32 So.2d at 838. In the average class action the information needed to satisfy the requirements of the rule as enunciated in Harrell, supra, at 293-94, can only be obtained through discovery. Consequently, trial courts should reserve ruling on a motion to dismiss until the party seeking to represent or maintain an action against a class has had the opportunity to employ sufficient discovery to ascertain the necessary information that must be plead. Thus, the rules of civil procedure must be liberally construed in permitting the amendment of pleadings. Even though this Court could determine whether the plaintiff's complaint satisfies the Harrell standards, Marley v. Saunders, 249 So.2d 30 (Fla. 1971), we decline to do so except insofar as holding that the complaint does present a common question of law, to-wit: Whether Ordinance 1936 increasing the water rates for all consumers of water in the City of Miami Beach was applied prior to its effective date. As to the other six standards enunciated in Harrell, supra, we express no opinion. Rather, this determination should be made by the trial court in accordance with our decision herein.
The Third District in affirming the trial court's dismissal also cited Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).[3] In Eisen, supra, 94 S.Ct. at 2151, the Supreme Court held that procedural due process in class actions requires that
"... individual notice must be provided to those class members who are identifiable through reasonable effort."
*470 Applying the Eisen due process rule to the instant case, we find that the class Frankel seeks to represent is readily identifiable through reasonable effort. The members of the plaintiff class may be ascertained through discovery. As an example only, individual notice given to the class members by a notice inserted in the defendant's regular monthly billing to its water users might be found to be adequate. Once notice to the class members has been effected, the Eisen mandate will be satisfied.
The decision of the Third District is quashed and this cause is remanded to the trial court for proceedings consistent with our decision.
It is so ordered.
OVERTON, C.J., ADKINS, ENGLAND, SUNDBERG and HATCHETT, JJ., and LEE, Circuit Court Judge, concur.
BOYD, J., dissents.
NOTES
[1] Rule 1.220 is identical to its predecessor, Section 14 of the 1931 Chancery Act.
[2] We note that in City of Miami Beach v. Jacobs, 315 So.2d 227 (Fla.App.3d 1975), the Third District Court of Appeal affirmed a finding that a class suit was proper although the factual situation apparently was materially identical to this case.
[3] The constitutional procedural due process requirement is the only facet of the Eisen decision which must concern us herein. The remainder of the Supreme Court's decision regards its interpretation of the Federal class action rule which, absent constitutional considerations, is inapplicable to our interpretation of Florida Rule of Civil Procedure 1.220.