563 So.2d 739 (1990)
ESTATE OF Margarete BOBINGER, Dino Spennato, Max Wimmer, Xavier Huber, Wilhemus J. Jansen, Martina Jansen, Max Schaeubli, and Gamil F. Zeyadi, Individually, Jointly, and Severally, and On Behalf of All Others Similarly Situated, Appellants,
v.
The DELTONA CORPORATION, a Delaware Corporation, Appellee.
No. 89-01524.
District Court of Appeal of Florida, Second District.
June 8, 1990.
*740 Mercedes Busto, Michael G. Nearing and Robbie D. Lake of Bailey & Hunt, Miami, and Roland Langen, Miami Beach, for appellants.
Joseph Mancilla, Jr. of Mancilla & Betz, P.A., Coral Gables, for appellee.
DANAHY, Acting Chief Judge.
This is an appeal from the dismissal with prejudice of a class action complaint alleging fraud upon the court. We reverse. Although the class allegations sometimes fall short of the pleading requirements of Florida Rule of Civil Procedure 1.220, we cannot say that the deficiencies are incapable of amendment. We disagree with the trial court in its holding that, as a matter of law, a class action cannot be grounded upon extrinsic fraud. We do, however, agree that dismissal was proper in this case because the complaint, as it presently is framed, fails to state a cause of action for extrinsic fraud. Nevertheless, we must reverse because the trial court's order stated that the dismissal was with prejudice. The appellants should have been allowed an opportunity to amend their complaint.

A. FACTUAL BACKGROUND
An outline of the events leading up to the filing and dismissal of this complaint is necessary for a complete understanding of the allegations of fraud. The problems at issue here were spawned by the appellee's (Deltona) frustrated attempts to develop *741 and sell residential and commercial properties on Marco Island. Deltona's development of the properties, which are located on environmentally sensitive wetlands, was halted when it failed to obtain necessary dredge and fill permits from state and federal authorities. Deltona's inability to develop these lots resulted in its failure to fulfill its part of the bargain with the thousands of purchasers who had already signed installment sales contracts. After negotiations with the State of Florida, Department of Business Regulation, Division of Land Sales and Condominiums, Deltona established the Marco Island Option Program which provided a method of lot exchanges, refunds and combinations of both, to its lot purchasers. Deltona was required to place additional properties in trust to insure that sufficient money would be available to secure the refunds under the Option Program. The state continues to oversee the Option Program.
The appellants are all purchasers of undeveloped lots who paid the money as required under their individual installment sales contracts but who have received neither the agreed-upon property, nor a refund, nor have had their claims otherwise settled through the Option Program. In March of 1984, Deltona conveyed fee simple title to all the lots it could not develop to the State of Florida as part of an overall agreement with the state that included the Option Program. Because all these contracts were filed in the public records, they constituted clouds on the title of the lands which Deltona had conveyed to the state. When the contract to which each appellant was a party was not satisfied by either the offer and acceptance of a refund or the substitution of an alternative lot to the mutual satisfaction of Deltona and the purchaser, Deltona instituted suits in the circuit court of Collier County seeking to quiet title to each of the lots covered by the installment sales contracts of the appellants. The suits also sought to cancel each contract. All of the class representatives/appellants are citizens and residents of foreign countries who were solicited by Deltona in their homelands and who entered into the sales contracts there. In the instant case, they sought to represent a class which includes similarly situated plaintiffs or military personnel stationed overseas.
No appellant or purported class member made an appearance to contest the quiet title action instituted against him or her. Consequently, defaults and final judgments thereon were entered quieting title to each of the appellants' lots and cancelling their contracts of record. When the appellants received notices of these judgments, they filed a class action complaint in the trial court in an effort to set aside all the defaults and final judgments. The trial court dismissed this complaint on the grounds that it failed sufficiently to allege a class action and, further, that a class action on extrinsic fraud is not allowed in Florida according to the rule announced in Osceola Groves, Inc. v. Wiley, 78 So.2d 700 (Fla. 1955), and Lance v. Wade, 457 So.2d 1008 (Fla. 1984). The dismissal was without prejudice to the refiling of individual suits to set aside the defaults, which the individual appellants subsequently did. These individual suits were then stayed, and continue to be stayed, pending the completion of these appellate proceedings.
The allegations contained in the class action complaint, which we summarize below, attempted to state a cause of action in extrinsic fraud:
1. The default judgments should be set aside as a product of mistake, inadvertence or excusable neglect in that although some of the appellants had received notice of the quiet title actions by mail, such notice was received beyond the time necessary to file an answer or the pleadings were in English which many of the appellants did not read or write so that they could not understand the import of the pleadings.
2. Although a quiet title action is an action in equity, Deltona requested the relief of cutting off appellants' rights under the contract (i.e., to get a refund) which relief is only obtainable in an action at law, specifically by requesting that the court cancel the contracts referred *742 to in the complaint for quieting title.
3. That Deltona manipulated the blind filing system in Collier County so that all the quiet title suits would be heard by one judge.
4. That Deltona failed to plead a valid cause of action for the exercise of long-arm jurisdiction over the appellants who are not subject to long-arm jurisdiction pursuant to section 48.193, Florida Statutes.
5. That Deltona alleged in the quiet title actions that service had been had on all appellants by publication which was not properly available to Deltona since the appellants were available for personal service and that Deltona knew their exact addresses; that Deltona had filed false affidavits stating that Deltona had made diligent inquiry to discover the appellants' residences; and that service by publication is improper and inadequate notice to extinguish one's contractual rights as Deltona was actually seeking to do.
The trial court dismissed the complaint based on two grounds: (1) that the appellants failed to plead their class action allegations sufficiently; and (2) that extrinsic fraud claims in Florida cannot be tried in the class action form.

B. SUFFICIENCY OF CLASS ALLEGATIONS
We start by reviewing the special pleading requirements for class action complaints as outlined in Florida Rule of Civil Procedure 1.220. Generally, the plaintiff must allege the existence of a class, demonstrate that the four prerequisites specified in rule 1.220(a) are satisfied and that the action meets the criteria for one of the three types of class actions defined in rule 1.220(b). The rule also requires the pleader to define the alleged class and specify the approximate number of class members. The four prerequisites of subsection (a) of the rule are usually referred to as the principles of numerosity, commonality, typicality and adequacy. See Powell v. River Ranch Property Owners Ass'n, 522 So.2d 69 (Fla. 2d DCA), review denied, 531 So.2d 1354 (Fla. 1988); Paradise Shores Apartments, Inc. v. Practical Maintenance Co., 344 So.2d 299 (Fla.2d DCA 1977); Maner Properties, Inc. v. Siksay, 489 So.2d 842 (Fla. 4th DCA 1986), abrogated on other grounds, Holiday Pines Property Owners Ass'n v. Wetherington, 557 So.2d 243 (Fla. 4th DCA 1990); and Dade County Police Benevolent Ass'n v. Metropolitan Dade County, 452 So.2d 6 (Fla. 3d DCA 1984), petition for review denied, 461 So.2d 114 (Fla. 1985); see also, The Florida Bar, Florida Civil Practice Before Trial § 11.23 (4th ed. 1983), and H. Trawick, Florida Practice and Procedure § 4-8 (1989).
In deciding whether dismissal of the instant complaint was warranted, we must confine ourselves to the four corners of the complaint.

(1) Existence of a Class
In paragraph 10 of the complaint, the appellants allege that the class is made up of persons who (1) entered identical installment contracts with Deltona; (2) were advised that the lots would not be developed; (3) were offered delayed refund and/or land substitution agreements as restitution; (4) have not received any refunds; and, (5) have had final judgments by default rendered against them by virtue of the quiet title actions filed by Deltona in the Twentieth Judicial Circuit (Collier County). The trial court in its order dismissing the complaint did not deal specifically with the statement outlining the makeup of the purported class. We find that the allegations of paragraph 10 are sufficiently specific and precise to satisfy the pleading requirement so as to state the prima facie existence of a class. The fact that the complaint does not outline every detail qualifying a person to be a class member is, at this early stage in the proceedings, unnecessary. "In the average class action the information needed to satisfy the requirements of the rule as enunciated in Harrell [v. Hess Oil & Chemical Corp., 287 So.2d 291 (Fla. 1973)], at 293-94, can only be obtained through discovery." Frankel v. City of Miami Beach, 340 So.2d 463, 469 (Fla. 1976).

*743 (2) Numerosity
Paragraph 11(a) of the complaint contains the allegations of numerosity. Unfortunately, in this paragraph the numerosity allegation does not state a specific quantity but only that the class is "so numerous and joinder of all members is impracticable." It is alleged that the class members reside outside Florida, most of them in Europe. In our view, such allegation speaks to the later question of why a class action is the superior form of action, an issue addressed by subsection (b)(3) of the rule. This allegation, of course, also falls short of the pleading requirement that the complaint specify the approximate number in the class. This is not to say, however, that the appellants cannot allege a particular number presently known to them. Although the trial court dismissed the complaint with prejudice, it was primarily because of its interpretation of Florida's fraud class action rule, which we discuss infra. We expect that the appellants can correct the defects under this numerosity rubric upon amendment of the complaint particularly in view of the appellants' representation at oral argument that the class exceeds 400 persons. We note that classes as small as 25 have fulfilled the numerosity requirement. Fox v. Prudent Resources Trust, 69 F.R.D. 74 (E.D.Pa. 1975) (general class action with class numbering 148 might fail if smaller subclasses for another count must be maintained which would fall below 25).

(3) Commonality
The questions of fact common to all class members are alleged, in paragraph 11(c), to be: (1) sales contracts with Deltona; (2) Deltona's failure to develop each lot as agreed; (3) no contractually authorized refunds received from Deltona; (4) Deltona's filing of quiet title actions against each class member; and (5) void or voidable final judgments of default in each quiet title action. The common questions of law, found in paragraph 11(d) are alleged as: (1) mistake, inadvertence or excusable neglect in not appearing in each quiet title action; (2) fraud upon the court; (3) lack of personal jurisdiction; (4) Deltona's defective affidavits in support of service by publication; (5) improper service of process by publication; (6) Deltona's failure to serve all pleadings and every other paper on all appellants prior to entry of default; and (7) Deltona's failure to file nonmilitary affidavits prior to default judgments being entered against all the appellants.

(3a) Common Questions of Fact
We have no question in our mind that the common questions of fact were sufficiently alleged. The alleged facts, which we take as true at this stage, show that the members of this purported class all behaved in a way similar to each other (in entering land sales contracts, being defaulted, etc.), and Deltona has acted toward each of them in a similar way. The dismissal order merely states in a conclusory manner that the appellants have failed to allege common facts without indicating any particular distinction to show which facts were not (or could not be) in common.

(3b) Common Questions of Law
Regarding the trial court's dismissal on the common questions of law, the court held that actions for extrinsic fraud (fraud upon the court) are inherently diverse and cannot be the subject of a class action under Florida law, citing Osceola Groves and Lance. This is the heart of the matter before us.[*] We disagree with the trial court's reliance on Osceola Groves and Lance to dismiss this complaint because we find them readily distinguishable from the instant case.

(3c) Extrinsic versus Intrinsic Fraud
Osceola Groves and Lance represent the state of the "fraud rule" in class actions in Florida. Lance is a reaffirmation of Osceola Groves after what the *744 supreme court decided was a misapplication of the intervening case of Frankel:
The district court has misinterpreted our Frankel decision. We did not, as the district court contends, retreat in that decision from the prohibition of fraud class actions based on separate contracts which was established in Osceola Groves and reaffirmed in Avila [South Condominium Association v. Kappa Corp., 347 So.2d 599 (Fla. 1977)]. In fact, the complaint in Frankel did not allege fraud. The issue was whether the fraud class action rule adopted in Osceola Groves should be given general application "to class actions wherein fraud has not been alleged." 340 So.2d at 468.
Lance, 457 So.2d at 1010. The supreme court did not condone citing Osceola Groves for support in dismissing class actions containing no fraud allegations as happened in the cases leading up to Frankel. The two situations were to be kept separate:
In Frankel this Court dealt with an entirely different issue and factual situation. Frankel involved in a class action, brought on behalf of city water consumers, which challenged the effective date of a city ordinance which increased the water rate. In Frankel we were not concerned with a fraud class action based on separate contracts and we did not expressly or inferentially recede from the prohibition against such actions. The distinction between Frankel and Osceola Groves is clear. Where, as in Osceola Groves and the present case [Lance], fraud based on separate contracts is alleged, the Frankel test is irrelevant... .
We recognize that there has been some criticism of the limitation placed on class actions by our Osceola Groves decision. See, e.g., Avila, 347 So.2d at 610 (England, J., dissenting); Arnold, Class Actions in Florida  A New Look, 31 U.Fla.L.Rev. 551 (1979). Nevertheless, we adhere to the view that "fraud claims on separate contracts are inherently diverse," Avila, 347 So.2d at 609, and, as a result, we reaffirm the prohibition against fraud class actions based on separate contracts.
Lance, 457 So.2d at 1011. The rule governing fraud class action suits in Florida is, therefore, straightforward: Fraud class actions based on separate contracts are prohibited.
As the supreme court explained in Lance, the reasons for this rule are apparent.
In a situation such as this [Lance], involving multiple contractual sales, each of the parties has his own separate and distinct contract and must make a determination as to which terms are important to him. What one purchaser may rely upon in entering into a contract may not be material to another purchaser. Illustrative of this fact is that, in the instant case, some of the members of the class did not receive the public offering statement prior to their purchase of a lot. These purchasers could not, therefore, have relied upon the asserted fraudulent representation contained in the public offering statement.
Lance, 457 So.2d at 1011. This is why it is said that fraud claims are inherently diverse, most especially in class actions based upon contract.
The case before us differs from the cases the appellee cites in an important way: Those cases, Osceola Groves, Avila, Lance, all involved intrinsic fraud in which the class action was truly based on the separate contracts. Each member of each class was suing because of fraud in procuring each contract. Although there are separate installment contracts in the case before us, the complaint the trial court dismissed does not seek to rescind those contracts based on fraudulent inducement. On the contrary, the appellants wish to have all their contracts revived including the attendant refund rights. To this end, they sought to set aside all the default judgments which not only quieted title to each lot but also purported to extinguish their contractual rights.
The default judgments sought to be vacated here were procured through a single course of conduct which is alleged to constitute extrinsic fraud, or fraud upon the court, *745 an altogether different species of fraud than intrinsic fraud. This distinction between extrinsic and intrinsic fraud is ably explained in DeClaire v. Yohanan, 453 So.2d 375 (Fla. 1984):
Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side  these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing. (Citations omitted.)
Id. at 377, citing United States v. Throckmorton, 98 U.S. 61, 65-66, 25 L.Ed. 93 (1878). We have held that a complaint alleging untrue factual allegations in the affidavit supporting constructive service is sufficient to state a claim of extrinsic fraud or fraud upon the court. Pender v. Hatcher, 303 So.2d 427 (Fla.2d DCA 1974); see also, M.L.B. v. Department of Health & Rehabilitative Services, 559 So.2d 87 (Fla. 3d DCA 1990) (if HRS knowingly failed to provide complete medical history of child with alleged severe psychiatric problems, such would constitute extrinsic fraud in adoption proceedings).
Deltona argues that there is inherent diversity in the claims which each class member might have regarding why a default should not have been entered against him or her. Indeed, the complaint here does contain an allegation that some appellants had received a Notice of Action and copy of the complaint but suggesting that the English language was difficult for them to understand or that it was received too late to file an answer. Although there may be some diversity, rule 1.220 does not require denial of class certification "merely because the claim of one or more class representatives arises in a factual context that varies somewhat from that of other [representatives]." Powell, 522 So.2d at 70. Additionally, each appellant, as well as each purported class member, seeks the only one remedy available, namely, vacation of the default judgment entered against him or her. Although there may be some variety in defenses, the sought-for remedy and the questions of fact and law clearly predominate in the allegations of this complaint, at least sufficient to withstand a motion to dismiss before any discovery is had on the question whether to certify the class. Any diversity of defenses could possibly be handled by the creation of subclasses.
Because all the cases dealing with the fraud rule in class actions involved intrinsic fraud alone, we cannot say that they support the same holding when extrinsic fraud is alleged. We assume then, for purposes of the instant case, that extrinsic fraud can be a basis for a valid cause of action in a class action complaint. Since we hold here that the Florida fraud class action rule does not include extrinsic fraud, these commonality allegations are sufficient on their face.

(4) Typicality
The typicality principle has to do with the class representative(s) vis-a-vis the class members. Here we have a single course of conduct by the appellee in filing quiet title actions against the appellants and all purported class members and succeeding in having default judgments entered against each. Such common course of conduct on the appellee's part against the purported class is a sufficient pleading of typicality. Powell; Lamb v. United Security Life Co., 59 F.R.D. 25 (S.D.Iowa 1972). Here, apparently, the claim of the class representatives is not only typical but identical to all class members. Further, they all seek the same and only available remedy.

*746 (5) Adequacy
This principle also concerns the class representatives' relationship with the class members to prevent choosing as representatives those who may have interests antagonistic to the class or a poor choice when another may be more fully qualified and who may prosecute more vigorously (this includes the qualification of the class representatives' counsel as well). The appellants allege in paragraph 11(g) that they are "committed to pursuing this lawsuit," that they have retained counsel experienced in complex litigation, and that one co-counsel can communicate in their own language with those appellants and class members who do not speak English. The "commitment" language quoted above is somewhat general and conclusory; indeed we would hope that any plaintiff is committed to and believes in the justness of his cause. Nonetheless, the other allegations of the adequate representation are sufficient to fulfill this pleading requirement. The trial court's order does not explain how the complaint has failed in this adequacy requirement but merely states that the appellants have failed to show that they can adequately represent the class. The court's cited cases do not help clarify this finding.

(6) Type of Class Action Under Rule 1.220(b)
The final requirement for successful pleading of a class action is to state under which part of subsection (b) of the class action rule the case falls. The rule expects a specific citation to (b)(1), (b)(2) or (b)(3). See Fla.R.Civ.P. 1.220(c)(2)(A). The instant complaint is defective, but readily amendable, in this regard in that it has no such specific citation although language in it suggests the action to be under (b)(3). Paragraph 11(i) states that a "class action is superior to other available methods for the fair and efficient adjudication of these claims." A (b)(3) type class action must be ill-fitted to the (b)(1) or (b)(2) type and, furthermore, have common questions of law or fact predominating over individual questions. The (b)(3) category basically represents a catchall since the reason for being of class actions is to determine common questions of law and fact. Be that as it may, the kind of fraud alleged in this complaint, that is, extrinsic, combined with the alleged similarity of action in Deltona's conduct vis-a-vis each appellant in quieting title to these lots, suggests that a class action is the most suitable method for adjudicating these claims.
In summary, we recognize that the fraud class action rule requires dismissal of suits based on separate contracts. Inasmuch as the complaint here sounded in extrinsic fraud, or fraud upon the court, and was not based on separate contracts, it was error to dismiss it on that ground. The allegations in the complaint, in most respects, sufficiently stated grounds for adjudicating the issue in the class action format; where the complaint was deficient, the appellants should have been allowed an opportunity to amend.

C. SUFFICIENCY OF EXTRINSIC FRAUD ALLEGATIONS
The final question becomes whether the appellants have successfully alleged extrinsic fraud, or fraud upon the court, in their class action complaint. This type of fraud, as outlined in DeClaire, must be that which keeps them from presenting their case in court. With this distinction in mind, we turn now to look at each allegation of extrinsic fraud in the complaint.

(1) Mistake, Inadvertence, Excusable Neglect; Failure to Serve 
all Papers Prior to Default
The appellants claim that the default judgments should be set aside as a product of mistake, inadvertence or excusable neglect since, when notice of the quiet title actions was received by mail, some received it beyond the time for filing an answer or it was in English which many of the appellants did not read or write so that they could not understand the import of the pleadings. First of all, the appellants' admission of receipt of the notice of the quiet title action defeats at the outset any claim for extrinsic fraud because nothing Deltona *747 did prevented them from fully presenting their case in court. On the contrary, the appellants were provided the very notice they needed to answer the quiet title complaint. If an individual appellant received the notice beyond the time for filing an answer, this would furnish a potential ground for setting aside the final judgment on the default under Florida Rule of Civil Procedure 1.540 but does not allege any extrinsic fraud. When the appellants claim relief from defaults based on mistake, inadvertence or excusable neglect, they are essentially putting forth a claim in the nature of an avoidance of the default; thus we can infer that process was received. The complaint uses the phrase "some" when describing those appellants who received a Notice of Action and the quiet title complaint by mail but makes no concrete allegation that there are other appellants who received no notice of the quiet title action at all. This is a glaring omission in an extrinsic fraud claim since it provides the strongest argument for finding a default judgment void for lack of jurisdiction. There is only a bare and inconsistent factual conclusion (supporting a common question of law allegation for class purposes) stated elsewhere in the complaint we review that Deltona failed "to serve all pleadings and every other paper on all Plaintiffs [appellants] (and all members of the Class) prior to the entry of default." Because this bare allegation is unsupported by any factual background, we find it insufficient to support a claim for extrinsic fraud on the ground that no process was received.
Furthermore, while it is true that when soliciting each appellant's business in procuring the sales contract Deltona made it easier by communicating with appellants in their own language, we reject any notion that by such conduct Deltona was somehow required to translate its quiet title complaint into each appellant's native language or else be subject to an extrinsic fraud claim. The recorded sales contracts themselves were in English. The appellants were dealing with sales contracts respecting residential real property in Florida and, therefore, it is reasonable to expect that communications concerning litigation over this land would be in English.

(2) Lack of Personal Jurisdiction
Next, the appellants claim that Deltona failed, in its quiet title actions, to plead any facts establishing the basis for personal, long-arm jurisdiction and thus failed to plead a valid cause of action for the exercise of long-arm jurisdiction over them. The appellants argue, and Deltona agrees, that they are not subject to long-arm jurisdiction because they have not done any of the enumerated acts of section 48.193, Florida Statutes (1987), which would subject them to personal, long-arm jurisdiction. We agree with the parties that the record demonstrates no basis for the exercise of long-arm jurisdiction over the appellants. What is puzzling in the appellants' argument concerning the lack of long-arm jurisdiction is how that lack would show that the appellants were somehow barred from presenting their case in court.

(3) Manipulation of Blind Filing System
Extrinsic fraud is further alleged in that Deltona "manipulated" the blind filing system extant in Collier County so that all its quiet title actions would be heard by one judge. Again, how this affected the appellants in a way to keep them from presenting their case in court escapes us. The appellants allege no violation of court rules; the procedure followed may well have promoted judicial efficiency. In any event, we fail to see how the appellants were barred from presenting their case in court by such a practice. So far as alleged, Deltona made no illegal or fraudulent use of any procedural rule.

(4) Improper Service by Publication; Defective Affidavits
More troublesome is the appellants' claim that Deltona, in its suit in equity to quiet title, requested relief which the appellants allege is obtainable only in an action at law, i.e., that Deltona requested that the court cancel the sales contracts in its judgments quieting title, thus extinguishing the appellants' refund rights under the sales contracts. This claim is logically bound to the final claim that Deltona obtained service in its quiet title suits by *748 publication, a method to which it was allegedly not entitled since Deltona knew the addresses of the appellants. The appellants also aver that the allegations in the affidavit supporting constructive service in the quiet title suits falsely claimed that Deltona had made "diligent search and inquiry" to discover the appellants' residences (supposedly false since Deltona had their addresses on file); and that service by publication was improper and inadequate notice to extinguish contractual rights.
Like the "manipulation" claim above, it appears to us that Deltona did not act in a fraudulent manner because it followed the constructive service statute. The appellants admit that since they reside in foreign countries they are not amenable to personal service within the state of Florida. See, § 48.031, Fla. Stat. (1985). They also have not done any of the specific acts which would submit them to personal jurisdiction under the long-arm statute, section 48.193. The only remaining way for Deltona to have effected service upon them was through constructive service outlined in chapter 49 of our statutes. Naturally, proceeding under chapter 49 instead of under chapter 48 will give the court only in rem or quasi in rem jurisdiction. Bedford Computer Corp. v. Graphic Press, Inc., 484 So.2d 1225 (Fla. 1986); Risman v. Whittaker, 326 So.2d 213 (Fla. 4th DCA 1976); see generally, H. Trawick, Florida Practice and Procedure § 8-17 (1989). Subsections (2) and (5) of section 49.011, Florida Statutes (1987), provide the court this jurisdiction in the type of suit at issue here:
Service of process by publication may be made in any court on any person mentioned in s. 49.021 in any action or proceeding:
... .
(2) To quiet title or remove any encumbrance, lien, or cloud on the title to any real or personal property within the jurisdiction of the court or any fund held or debt owing by any party on whom process can be served within this state.
... .
(5) For the construction of any will, deed, contract, or other written instrument and for a judicial declaration or enforcement of any legal or equitable right, title, claim, lien, or interest thereunder.
As the introductory paragraph of this subsection states, for the court to have the proper jurisdiction, the parties served by publication must also fit within the strictures of subsection 49.021. The appellants' factual allegations in the complaint showed that personal service of process could not be had upon them because they were not present in the state and had done no act under the long-arm statute. They are, therefore, the very persons upon whom section 49.021 contemplates service by publication in this kind of suit. The mere fact that Deltona knew their addresses carries no import; the statute itself mentions that in the affidavit supporting service by publication a sworn statement must be made stating the residence "as particularly as is known." § 49.041(1), Fla. Stat. (1987). Although the record does not contain the affidavits supporting constructive service that were filed in the quiet title suits, the complaint we review states that process in the quiet title suits was received by mail; therefore, it is obvious the appellants' specific residences must have been set forth in the affidavits for them to have received a copy of the notices of action mailed to them at their particularized residence by the clerk of the court as required in section 49.12. We reiterate that no extrinsic fraud is alleged because the complaint on its face showed that Deltona was entitled to use constructive service and the allegation of false information in the affidavits supporting constructive service was insufficient.
Turning now to the question of adjudicating contractual rights in an equitable proceeding, the quiet title complaint filed by Deltona in each instance was in two counts: (1) the quiet title count; and (2) a count for declaratory judgment seeking to have the sales contracts cancelled of record. As we have said, these actions are both the type for which service by publication is authorized. We contrast these actions with one, for example, where Deltona might seek a money judgment based on breach of contract. Service by publication in such a case *749 would not have been sufficient to insure proper jurisdiction. Bedford Computer; New England Rare Coin Galleries, Inc. v. Robertson, 506 So.2d 1161 (Fla. 3d DCA 1987). As to the count seeking cancellation of the contracts in the public records, the jurisdiction, obtained here by publication, was quasi in rem because it deals with an individual's interest in real property and this property is within the jurisdiction of the court. According to Black's Law Dictionary 1121 (5th ed. 1979):
There must be a connection involving minimum contact between the property and the subject matter of the action for a state to exercise quasi in rem jurisdiction. Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683. "Quasi in rem proceedings" is generally defined as affecting only interest of particular persons in specific property and is distinguished from proceedings [purely] in rem which determine interests in specific property as against the whole world.
This is the exact case before us. Deltona was trying to clear away any remaining vestiges on the public records which interfered with a clear title to the land in question. The sales contracts had been filed of record and such an action was proper to remove them incident to the quiet title relief granted. This is not to say, of course, that removing the contracts from the public record impaired, in any manner, the contractual obligations between the parties, including, for example, any rights to refund. This is so because the trial court had no in personam jurisdiction over the appellants. We reiterate that the quiet title judgments merely removed the clouds on the title to the lands which the sales contracts created. Because Deltona exactly complied with the statute concerning service of process in the quiet title suits, it could not have committed extrinsic fraud as claimed in the appellants' class action suit.

(5) Failure to File Nonmilitary Affidavits
We find no merit in this issue since the appellants do not allege that any of them were military personnel. If there are any military purchasers of property known to be such by Deltona, failure to file such affidavits may well constitute a ground for relief from a quiet title judgment. That is not the case as we have it here. In any event, this allegation suffers from the same defect shown several times, that this is not an allegation showing that somehow the appellants were thus barred from presenting their cases in court.

D. CONCLUSION
We reverse the trial court's order dismissing the complaint with prejudice. We note that the appellants' second amended complaint attempting to state individual causes of action properly remains pending until final adjudication of the class action complaint on remand. After adjudication of the class action question on remand the time will be ripe for action on those individual causes.
Reversed and remanded for further proceedings.
LEHAN and ALTENBERND, JJ., concur.
NOTES
[*] The remaining questions of law we address below because they are dispositive of the extrinsic fraud allegations rather than the class issue. We do not hold here that these remaining points can never form the basis of a claim for common questions of law for purposes of a class action; we only underscore here that they do not in the present complaint because the complaint sounds in extrinsic fraud.