DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CONSTRUCTION CONSULTING, INC.,**
Appellant,

v.

**THE DISTRICT BOARD OF TRUSTEES OF BROWARD COLLEGE**,
Appellee.

No. 4D21-3104

[September 7, 2022]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Carlos A. Rodriguez, Judge; L.T. Case No. CACE16-007456.

Kenneth D. Cooper, Fort Lauderdale, for appellant.

Joseph W. Jacquot, Jonathan K. Osborne, and Lawrence G. Horsburgh of Gunster, Jacksonville, for appellee.

GROSS, J.

Construction Consulting, Inc. ("CCI") appeals from a final judgment entered in favor of the District Board of Trustees of Broward College (the "College") after the trial court granted the College's motion for summary judgment. This court has jurisdiction.[1]  *See* Fla. R. App. P. 9.030(b)(1)(A).

---

[1] We reject the College's argument that, because CCI did not attach copies of certain interlocutory orders to the notice of appeal, CCI failed to comply with Florida Rule of Appellate Procedure 9.110(d) and waived any arguments relating to these prior orders.  The interlocutory orders at issue made various legal rulings, including dismissing certain counts.  Rule 9.110(d) states, in relevant part, that "a conformed copy of the order or orders designated in the notice of appeal shall be attached to the notice . . . ."  Here, CCI attached a conformed copy of the final judgment.  This was sufficient to bring up for review all interlocutory orders entered as a necessary step in the proceeding.  *See Auto Owners Ins. Co. v. Hillsborough Cnty. Aviation Auth.*, 153 So. 2d 722, 724 (Fla. 1963) ("The appeal from the final judgment brings up for review all interlocutory orders entered as a necessary step in the proceeding.").

This case arises out of a construction contract between CCI and the College. The College offered a final payment to cover outstanding invoices. CCI accepted the payment, thus barring its later claims under both the common law doctrine of accord and satisfaction and a waiver clause in the contract.

### *The Master Contract*

The College and CCI were parties to a construction contract (the "Master Contract") dated May 23, 2012. The Master Contract refers to CCI as the "Construction Manager" and to the District Board of Trustees of Broward College as the "Owner."

Article 14 of the Master Contract, entitled "Payment to Construction Manager," governs pay requests by CCI. Paragraph 14.4 provides that "[p]ay requests shall be accompanied by documentation in support of Subcontract Costs and Reimbursable Expenses, if any, as Architect or Owner's Representative may require." Paragraph 14.4 also provides that "[s]trict compliance with the requirements of this paragraph 14.4 shall be a condition precedent to any payment, including Final Payment, under this Agreement."

Paragraph 14.5, entitled in part "Lien Releases," states that CCI's "application for Final Payment shall be accompanied by final lien releases and waivers of claim from [CCI] and all Subcontractors," which "shall be a condition precedent to Final Payment to [CCI]."

Paragraph 14.8, entitled "Payment at Substantial Completion," governs payment due "after execution of the Certificate of Substantial Completion":

> 14.8 <u>Payment at Substantial Completion</u>. Subject to the limitations of the GMP [Guaranteed Maximum Price], and provided that all conditions precedent have been satisfied, within thirty (30) days after execution of the Certificate of Substantial Completion of the Project, Owner shall pay Construction Manager all sums due Construction Manager, including retainage, less any amounts attributable to liquidated damages, and less two hundred percent (200%) of the reasonable cost for completing all incomplete Work, correcting and bringing into conformance all defective and nonconforming Work, and handling all unsettled claims. As a condition precedent to such payment, however, Construction Manager shall deliver to Owner's Representative the final complete set of as-built drawings in the form of

2

marked-up blueline drawings, and an electronic format of the as-built documents, all required releases of claim, all certificates of occupancy or similar documents required for the occupation and use of the Project for its intended purposes, all required warranties and all Project Documentation as described in Article 12 herein.

Paragraph 14.9, entitled "Payment at Final Completion," states that if all conditions precedent have been satisfied, "Final Payment" is due "within thirty (30) days after execution of the Certificate of Final Completion." Paragraph 14.9 defines "Final Payment" as "all unpaid sums due [CCI] under this Agreement, less any amount properly withheld pursuant to this Agreement," and further states that CCI's "acceptance of Final Payment shall constitute an unconditional waiver and release of all claims by [CCI] for additional compensation beyond that provided in the Final Payment":

> 14.9 <u>Payment at Final Completion</u>. Subject to the limitations of the GMP, and provided that all conditions precedent have been satisfied, within thirty (30) days after execution of the Certificate of Final Completion of the Project, Owner shall pay Construction Manager **all unpaid sums due Construction Manager under this Agreement, less any amount properly withheld pursuant to this Agreement** ("Final Payment"). **Construction Manager's acceptance of Final Payment shall constitute an unconditional waiver and release of all claims by Construction Manager for additional compensation beyond that provided in the Final Payment**. Final Payment by Owner shall not, however, constitute a waiver by Owner of its rights or claims arising from Construction Manager's failure to perform in strict accordance with the requirements of the Contract Documents.

(Emphasis added).

Paragraph 14.12, entitled "Conditions Precedent to Payment," provides that "[i]n addition to all other conditions contained herein, it shall be a condition precedent to any payment otherwise due hereunder that . . . [CCI] have submitted its pay requests and backup documentation in the time, form, and manner required by this Agreement."

Paragraph 25.8, entitled "Entire Agreement/Amendments in Writing," states in part that "this Agreement may be amended only by written instrument signed by both Owner and Construction Manager."

Significantly, as it concerns a point raised by CCI, the Master Contract did not prohibit the collection of statutory interest for late payments.

### *The Dispute*

Between 2012 and 2014, the College hired CCI to work on numerous construction projects pursuant to the Master Contract. Among those projects were the following: (1) North Campus Building 49 Site Drainage; (2) ADA Hardware Project; and (3) Central Campus Building 6 Sound Booth Project (the "Sound Booth project").

On July 29, 2013, the College executed a purchase order for CCI to perform the Sound Booth project. Susanne Valdes was the College's project manager for this project. Subsequently, the parties corresponded regarding payment applications submitted by CCI on the project.

By letter dated April 25, 2014, Valdes wrote to CCI that "effective immediately we are terminating your agreement for the Building 6 Sound Booth project due to lack of response." Valdes added that "we have not heard back from you on a plan to complete the work." Valdes also noted that the College had rejected Payment Application #3 "due to an incomplete submittal."

The next day, April 26, 2014, CCI's principal, Thomas Carney, notified Valdes via email that CCI had "stopped all work" and was "preparing a final invoice."

By letter dated July 23, 2014, Valdes wrote that she was placing CCI "on notice due to you not responding to Broward College in a timely manner" regarding payment applications, and that CCI had "not met the terms" in the Master Contract.

On September 3, 2014, Carney met with the College's Vice President of Operations to discuss the parties' dispute.

By letter dated September 15, 2014, CCI sent the College summaries of open and recently completed projects. The summaries listed the payment draws for each project, whether the draw was paid or unpaid, and the number of days the draw was unpaid. With respect to the Sound Booth project, CCI claimed that "we achieved substantial completion and a Temporary Certificate of Occupancy on the project on August 28, 2013." The payment summary for the Sound Booth project listed five draws,

4

including two paid draws, for a total of $101,819.07 (counting only the latest submission for each draw).

According to one of Carney's affidavits, CCI also made "specific claims for interest" in an October 2014 meeting with the Vice President of Operations.

The Architect for the Sound Booth project reviewed CCI's September 2014 submission and advised the College that his assessment of the completed contract amount was $88,465.83, as opposed to the $101,819.07 claimed by CCI, representing a difference of $13,353.24.

### *The Reconciliation Report and Enclosed Checks*

On June 1, 2015, the College mailed CCI a Reconciliation Report, together with three checks. The Transmittal cover of the Reconciliation Report was addressed to "Mr. Tom Carney, Construction Consulting, Inc." at CCI's corporate address. A College employee testified that she "prepared the reconciliation report based on what [Tom Carney] had submitted" in his "report of what he thought he was due."

The Reconciliation Report stated that it was "a summary of the final agreement between Construction Consulting Contractors [sic] (CCI) and Broward College to reconcile final payment due to CCI for outstanding invoices." The Reconciliation Report was not signed by CCI, nor was it signed by any employee of the College.

For the North Campus Building 49 Site Drainage project, the Reconciliation Report identifies a "Final Payment" of $73,341.92.

For the ADA Hardware project, the Reconciliation Report specifies a "Final Payment" of $83,053 and notes that the project "was reassigned and completed by another continuing services CM at Risk." The Reconciliation Report provides the following "Recommendation" for this project: "CCI's claim for the total project is $91,511 after deductive change order in the amount of $90,682.43. A payment of $8,458.25 was issued. . . . Recommendation is to execute deductive change order as submitted by CCI and pay outstanding balance of $83,053."

For the Sound Booth project, the Reconciliation Report identifies a "Final Payment" of $8,846.59 and notes that "CCI did not complete the scope of work for this project." The Reconciliation Report provides the following "Resolution" for this project:

5

**Resolution**: CCI's claim for this project including the deductive change order ($20,628.25) is $101,246. Payments of $79,619 have been issued. The disputed balance requested by CCI is $21,627.

Our recommendation is for Facilities to prepare and execute the required deductive Change Order and to pay the outstanding balance per the Architect's approved amount of $88,465. The amount owed after payments issued is $8,846.

The Reconciliation Report offered the following "Final Resolution for payments to CCI":

**Final Resolution for payments to CCI:**

| | |
|---|---|
| Building 49 Site (Pay balance in full) | $ 73,341.92 |
| ADA Hardware (Pay balance in full) | $ 91,264.13 |
| Sound Booth (Pay Architect-approved amt.) | $ 8,846.59 |
| | |
| Total recommended amt. to be Paid by BC | $165,241.34 |

(paraphrased for formatting purposes). The Reconciliation Report did not offer any payment for statutory interest.

The Reconciliation Report also includes a "Final Payment" chart that lists "Construction Consulting Inc" at the top. The chart sets forth the "TOTAL PAID" for each project, the "Amount on check" applicable to each invoice, and the "Check Number" and "Check Date" applicable to each invoice. The bottom of the chart states "FINAL PAYMENT TO CCI" of $165,241.34.

Enclosed with the Reconciliation Report were: (1) a check for $82,748.31; (2) a check for $72,879.76; and (3) a check for $9,613.27. The three checks totaled $165,241.34, which corresponded with the total "Final Payment" detailed in the Reconciliation Report.[2] The checks themselves contained no "Payment in Full" language.

---

[2] The amounts on the checks do not correspond to the Total Paid for each project, as the checks sometimes grouped together invoices from different projects.

### *CCI Deposits the Checks and Demands More Money*

On June 6, 2015, CCI received the Reconciliation Report and the checks. Two days later, CCI deposited the checks.

By letter dated June 19, 2015, CCI acknowledged that the College forwarded "the recent payments for construction work we completed in 2013 and 2014," and further acknowledged that "[w]e are in receipt of your reconciliation report for CCI." CCI disputed the Architect's "rationale for cutting our payments by $12,781.00." CCI also complained about the College's "lack of prompt payments," asserting that "there remains a claim for interest in accordance with Florida Statue [sic] 218.735." CCI attached an invoice for the amount CCI claimed was due "for Broward College not making timely payments for our construction services."

### *The Litigation*

A. <u>CCI's Claims</u>

After the College refused to pay additional funds, CCI filed suit. CCI amended its complaint multiple times during the litigation, culminating in a Fourth Amended Complaint. Each iteration of the complaint asserted claims for violation of Chapter 218 (Count I), violation of Chapter 255 (Count II), declaratory judgment (Count III), writ of mandamus (Count IV), class action for interest owed (Count V), and breach of contract on the Sound Booth project (Count VI).[3] Attached to an early version of the complaint was a spreadsheet detailing the interest CCI claimed it was owed for the College's late payments on over 100 invoices for multiple projects between 2010 and 2014.

B. <u>Disposal of Counts I, III, IV, and V</u>

The College moved for partial summary judgment as to Counts I and II, arguing that the Local Government Prompt Payment Act and the Florida Prompt Payment Act were inapplicable to it. The predecessor judge granted the motion in part and denied it in part, ruling that the College "is a 'public entity' under Florida Statutes, Section 255, but is not a 'local governmental entity' under Florida Statutes, Section 218."

Consistent with this partial summary judgment order, the trial court ultimately dismissed Count I of the Fourth Amended Complaint. And, consistent with earlier rulings on the College's motions to dismiss, the trial

---

[3] In the Fourth Amended Complaint, Count VI was misnumbered as Count IV.

court also dismissed Counts III, IV, and V of the Fourth Amended Complaint. The trial court denied leave to file a Fifth Amended Complaint.

C. Motion for Final Summary Judgment

Meanwhile, the College moved for final summary judgment, arguing in relevant part that CCI waived and released all claims by accepting Final Payment.

Much time was spent on the factual issue of whether CCI received the Reconciliation Report.

At a hearing CCI's counsel stated: "My client has never testified he received a reconciliation report." Relying on this statement, the predecessor judge ruled that there was a "factual question" as to whether CCI had received the Reconciliation Report, so he denied the College's motion for final summary judgment "as to the affirmative defense of accord and satisfaction," while granting the motion in part as to several other issues.

After much skirmishing in discovery, Carney admitted in a deposition that CCI received the Reconciliation Report along with the checks it later cashed.

The College renewed its motion for summary judgment. The successor judge, Judge Rodriguez, granted the motion as to the two remaining counts of the Fourth Amended Complaint. The court concluded that the "undisputed facts mandate that summary judgment be entered for Broward College based on accord and satisfaction per the terms of the Master Contract, under which acceptance of Final Payment [constituted] an unconditional waiver and release of all claims by [CCI] for additional compensation beyond that provided in the Final Payment." The court then entered final judgment in favor of the College, prompting this appeal.

### Arguments on Appeal

On appeal, CCI raises issues concerning the application of the Prompt Payment Act, the language of the Master Contract and the Reconciliation Report, and the existence of jury questions, which would preclude summary judgment.

The College responds that CCI accepted Final Payment, thus waiving and releasing all claims. The College maintains that all of CCI's claims are barred by the doctrine of accord and satisfaction and by the plain terms of

8

the Master Contract, under which acceptance of Final Payment constituted "an unconditional waiver and release of all claims."

## *Standard of Review*

The standard of review for orders granting summary judgment is de novo. *Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000).

Florida's new summary judgment rule governs the adjudication of any summary judgment motion decided on or after May 1, 2021, including in pending cases. *In re Amends. to Fla. R. Civ. P. 1.510*, 317 So. 3d 72, 77 (Fla. 2021).

The amended rule states that summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(a) (2021). "[T]he correct test for the existence of a genuine factual dispute is whether 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *In re Amends. to Fla. R. Civ. P. 1.510*, 317 So. 3d at 75 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Under our new rule, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'" *Id.* at 75–76 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## *Law on Accord and Satisfaction*

Accord and satisfaction is a legal doctrine that has long been a part of Florida contract law.

"An accord and satisfaction results when: (1) the parties mutually intend to effect a settlement of an existing dispute by entering into a superseding agreement; and (2) there is actual performance in accordance with the new agreement." *Martinez v. S. Bayshore Tower, L.L.L.P.*, 979 So. 2d 1023, 1024 (Fla. 3d DCA 2008). "Compliance with the new agreement discharges the prior obligations." *Id.* Thus, "if an offer clearly serves as an accord and satisfaction, and the other party accepts the offer, then he or she is bound to the conditions attached." *Id.*

The Florida Supreme Court has declared that "when a claim in controversy is open and unliquidated and the party to whom it is due accepts payment in full it will operate as an accord and satisfaction ***even***

9

***though the party to whom paid declares that he takes it only in part satisfaction***." *Miller-Dunn Co. v. Green*, 16 So. 2d 637, 638 (Fla. 1944). (emphasis added). Thus, a party who so accepts a payment tendered in full cannot cabin the legal effect of its acceptance.

By contrast, where the facts do not demonstrate that the parties agreed to resolve a dispute by payment of a set amount, "a partial payment of a legal obligation does not act to satisfy and discharge that obligation." *Republic Funding Corp. of Fla. v. Juarez*, 563 So. 2d 145, 147 (Fla. 5th DCA 1990).

The language used by the parties in a transaction is crucial to the creation of an accord and satisfaction. "An accord and satisfaction results as a matter of law only when the creditor accepts payment tendered on the expressed condition that its receipt is deemed to be a complete satisfaction of a disputed issue." *St. Mary's Hosp., Inc. v. Schocoff*, 725 So. 2d 454, 456 (Fla. 4th DCA 1999). "When a creditor negotiates the tendered check with knowledge of the debtor's intent, whether through discussions, correspondence, or unambiguous language on the check, he is then bound to the agreement and cannot later turn around and sue for the remaining balance due under the former dispute." *Burke Co. v. Hilton Dev. Co.*, 802 F. Supp. 434, 439 (N.D. Fla. 1992). Therefore, "[i]f a creditor does not assent to the condition, then the proper course of action is to return the check. Simply put, the creditor cannot have his cake and eat it too." *Id.*

In *Martinez*, for example, the Third District noted that "[h]ad the Purchasers intended the Developer to remain obligated under the contract, then they should not have cashed their checks." 979 So. 2d at 1024. "It would be unjust," the court reasoned, "to allow a party to accept a check as an accord and satisfaction, and then later permit that party to sue under the same rights and obligations that the accord and satisfaction was intended to release." *Id.*

Florida courts have thus recognized that a creditor's acceptance of payment results in an accord and satisfaction where the check itself or an accompanying writing expressly indicates that the check constitutes payment in full of the debtor's obligations. *See Eder v. Yvette B. Gervey Interiors, Inc.*, 407 So. 2d 312, 314 (Fla. 4th DCA 1981) (declaring that an accord and satisfaction occurs "where a check is tendered in final payment for goods or services and is appropriately endorsed by the drawer in clear and unequivocal language which check is then accepted and cashed by the payee"); *Mortell v. Keith, Mack, Lewis & Allison*, 528 So. 2d 1362, 1362 (Fla. 3d DCA 1988) (holding that law firm's "negotiation of its client's check marked 'paid in full,' which was submitted with a letter clearly

10

demonstrating his position that the sum was in complete payment of the amounts due in an outstanding fee dispute between the two, effected an accord and satisfaction of the law firm's claim as a matter of law"); *Yelen v. Cindy's, Inc.*, 386 So. 2d 1234, 1234–35 (Fla. 3d DCA 1980) (holding that an accord and satisfaction occurred upon the creditor cashing the debtor's check, despite the creditor crossing out the check's restrictive endorsement and writing "received as partial agreement without prejudice," where the debtor sent a letter stating that the check was being tendered "in full satisfaction of the current controversy"); *Pino v. Lopez*, 361 So. 2d 192, 193 (Fla. 3d DCA 1978) (holding that a check issued and cashed in "Full and final payment for all goods, services and claims to date" was an accord and satisfaction as a matter of law); *McGehee v. Mata*, 330 So. 2d 248, 248–49 (Fla. 3d DCA 1976) (holding that an accord and satisfaction occurred upon the plaintiff cashing the defendants' check where, as part of the offer to settle plaintiff's claim, the defendants' cover letter stated that it was in "full compliance" with the parties' agreement and that one of the conditions attached was the execution of a general release by plaintiff).

Cases finding no accord and satisfaction have focused on ambiguities in transmittal letters and a lack of clarity as to the matters that a tender was supposed to cover. For example, in *St. Mary's*, we found that an accord and satisfaction could not be determined as a matter of law due to the ambiguity of a transmittal letter, which generally conveyed the debtor's position that "no further benefits will be payable" but did not expressly state that the check constituted payment in full for the debtor's obligations or that acceptance of the check would constitute an agreement with the debtor's position. 725 So. 2d at 456. Other cases have found no accord and satisfaction in similar circumstances. *See Miller v. Perez*, 524 So. 2d 1084, 1085–86 (Fla. 4th DCA 1988) (holding that no accord and satisfaction occurred, despite a limiting endorsement on the check stating that it constituted "full payment" for "all commissions due," where the disputed amount was for a future commission that was not yet due at the time the creditor cashed the check); *Jobear, Inc. v. Dewind Mach. Co.*, 402 So. 2d 1357, 1358 (Fla. 4th DCA 1981) (holding that where a restrictive endorsement could be interpreted as releasing only one of two separate and distinct claims—one for rent and the other for parts and labor—the creditor's acceptance of the check did not constitute an accord and satisfaction as to both claims).

### *Both the Language of the Master Contract and an Accord and Satisfaction Barred CCI's Claims*

The trial court properly entered summary judgment in favor of the College because CCI's claims were barred by both the common law doctrine of accord and satisfaction and the plain language of the Master Contract, which states that "acceptance of Final Payment shall constitute an unconditional waiver and release of all claims by [CCI] for additional compensation beyond that provided in the Final Payment." There is no genuine dispute of any material fact.

An accord and satisfaction (or a release under the Master Contract) occurred as a matter of law because CCI accepted the Final Payment, which was tendered on the express condition that its receipt was deemed to be a complete resolution of CCI's outstanding invoices. This is true even though CCI later declared that it accepted the checks only as partial payment of the debt.

The record establishes that after the parties' relationship broke down and CCI was terminated from the Sound Booth project, the College tendered to CCI a Reconciliation Report together with a Final Payment of three checks. Unlike the letter in *St. Mary's*, the Reconciliation Report made it clear that the College was offering Final Payment as a *final agreement* to resolve all outstanding invoices. Specifically, the Reconciliation Report indicated that it was intended to be a "Final Resolution for payments to CCI" and a "final agreement" between CCI and the College "to reconcile final payment due to CCI for outstanding invoices." The Reconciliation Report used the term "Final Payment" multiple times and indicated that it was offering "FINAL PAYMENT TO CCI" of $165,241.34.

There is no genuine dispute that CCI received the Reconciliation Report with the checks, and that CCI accepted Final Payment by depositing the checks in its bank account. That the checks themselves contained no restrictive endorsement is of no moment because they were accompanied by the Reconciliation Report, which plainly offered the checks as Final Payment—a defined term in the Master Contract that effectuated a waiver and release of all claims. Thus, under either the doctrine of accord and satisfaction or the Master Contract's unconditional waiver clause, CCI's acceptance of Final Payment constituted a waiver and release of all claims for additional compensation and gave rise to a final resolution of all disputed invoices, including claims for statutory interest.

We reject CCI's arguments in opposition to accord and satisfaction and waiver. We discuss four of the arguments as follows.

*First*, CCI contends that the College's failure to pay interest under either Prompt Payment Act precludes an accord and satisfaction. The Florida Prompt Payment Act provides that "[a] contract between a public entity and a contractor may not prohibit the collection of late payment interest charges authorized under s. 255.073(4)." § 255.075, Fla. Stat. (2012-2014). The Local Government Prompt Payment Act contains a substantially similar provision. *See* § 218.75, Fla. Stat. (2012-2014).

It is unnecessary for us to decide whether either statute applies to the College's contracts because neither prohibits the waiver of an interest claim as part of a settlement or an accord and satisfaction.

As CCI points out, an accord and satisfaction is a "contract." Still, "settlement agreements are favored by courts and will be enforced where possible." *Blunt v. Tripp Scott, P.A.*, 962 So. 2d 987, 988 (Fla. 4th DCA 2007). "If a party accepts an offer for a superseding agreement, which clearly intends an accord and immediate satisfaction, he or she is bound to each of the attached conditions of the new agreement and ***abandons the rights previously held***." *Cirrus Design Corp. v. Sasso*, 95 So. 3d 308, 312 (Fla. 4th DCA 2012) (emphasis added).

Moreover, "[u]nless a statute unequivocally states that it changes the common law, or is so repugnant to the common law that the two cannot coexist, the statute will not be held to have changed the common law." *Thornber v. City of Ft. Walton Beach*, 568 So. 2d 914, 918 (Fla. 1990). "The law has long recognized an individual's right to waive statutory protections as well as constitutional or contractual rights." *S.J. Bus. Enters., Inc. v. Colorall Techs., Inc.*, 755 So. 2d 769, 771 (Fla. 4th DCA 2000). And statutory rights may be waived as part of a settlement agreement. *Unicare Health Facilities, Inc. v. Mort*, 553 So. 2d 159, 161 (Fla. 1989). Assuming *arguendo* that one of the statutes applied to the College, nothing in the Prompt Payment Acts prevented CCI from waiving a statutory right to interest as part of a settlement after a dispute had arisen regarding the amount due under the contract.

Importantly, the Master Contract itself did not prohibit the collection of interest under the Prompt Payment Acts. But it did establish a procedure under which acceptance of Final Payment would constitute a waiver and release of any further claims. If CCI wanted to preserve its claim to statutory interest, it should have refused the College's offer of Final Payment and returned the checks.

*Second*, CCI argues that the unsigned Reconciliation Report cannot be binding because the Master Contract requires two signatures for a modification. This contention is unsound. The Reconciliation Report was not a modification of the Master Contract, as it did not alter any of its terms. Instead, the Reconciliation Report advised CCI that the accompanying checks were intended as Final Payment under the Master Contract, meaning that CCI's acceptance of payment would waive and release any further claims for compensation against the College. The Reconciliation Report may also be viewed as an offer to enter into an accord and satisfaction, which CCI accepted by cashing the checks for Final Payment. An accord and satisfaction is a superseding agreement rather than a modification to the original agreement.

*Third*, we reject CCI's argument that Paragraph 14.9 does not apply because the job was not completed. CCI asserts that Paragraph 14.9 is inapplicable because it requires all conditions precedent to be met before "Final Payment," which did not occur here. Paragraph 14.9 is entitled "Payment at Final Completion," and CCI did not achieve final completion on certain jobs, including the Sound Booth project. However, our examination of the full text of the provision establishes that the broad definition of "Final Payment" in Paragraph 14.9 should apply here.

The first sentence of Paragraph 14.9 accomplishes two things: (1) it defines "Final Payment"; and (2) it establishes the deadline for Final Payment once all conditions precedent have been satisfied. The term "Final Payment" is defined in Paragraph 14.9 as "all unpaid sums due [to CCI] under this Agreement, less any amount properly withheld pursuant to this Agreement." This language contemplates that a "Final Payment" could occur even where the contractor did not completely perform under the contract. Importantly, CCI had stopped all work before the College issued the Reconciliation Report. Thus, by offering Final Payment in the Reconciliation Report, the College was offering to pay "all unpaid sums due" to CCI under the Agreement and was waiving any unsatisfied conditions precedent to Final Payment, such as final completion and submission of lien release documents. And because CCI accepted the Final Payment by depositing the checks, this acceptance constituted an unconditional waiver and release of any claims for further compensation.

To avoid Paragraph 14.9's unambiguous language that "acceptance of Final Payment shall constitute an unconditional waiver and release of all claims by [CCI] for additional compensation," CCI argues that "[t]he correct clause is 14.8, Payment at Substantial Completion, since the job was not completed." This argument tries to squeeze a square peg into a round

hole. The Reconciliation Report was not offering Payment at Substantial Completion, it was offering Final Payment. No further work by CCI was contemplated by the Reconciliation Report. And the College did not make any deductions for "two hundred percent (200%) of the reasonable cost for completing all incomplete Work," which it would have done if it were offering a Payment at Substantial Completion.

*Fourth,* CCI argues that the Sound Booth project was a separate and distinct claim for which there is no evidence that CCI agreed to a lesser amount, precluding an accord and satisfaction. CCI's argument is unpersuasive. The Reconciliation Report clearly encompassed the Sound Booth project. Unlike *Jobear*, this is not a case where the offer of full payment failed to clarify whether it applied to a separate and distinct claim. The Reconciliation Report unambiguously offered Final Payment for the Sound Booth project, so the Sound Booth project was not separate and distinct from the outstanding invoices covered by the Reconciliation Report.

Contrary to CCI's suggestion, the College did not "renege" on the contract by disputing the amount CCI claimed it was owed on the Sound Booth project. Unlike *Perez*, this is not a case where a debtor reneged on an agreement—before a separate and distinct claim under the agreement became due—and then unsuccessfully tried to assert accord and satisfaction as a defense based on the creditor's acceptance of an earlier check with release language. Here, the Reconciliation Report unambiguously offered to pay the outstanding balance on the Sound Booth project "per the Architect's approved amount," which did not include the disputed balance of $21,627 requested by CCI. And CCI agreed to this lesser amount in the Reconciliation Report by depositing the checks.

In sum, the College made an offer of Final Payment to CCI intended as a "final agreement" between the parties "to reconcile final payment due to CCI for outstanding invoices." CCI accepted the offer of Final Payment by depositing the checks, thereby barring CCI's claims under the doctrine of accord and satisfaction or alternatively under the unconditional waiver clause of the Master Contract.

Finally, we affirm the dismissal of Counts III, IV, and V.

Even if the declaratory judgment count had been properly pleaded, any error in dismissing that count was harmless, as the summary judgment effectively declared CCI's rights under the Master Contract and the Prompt Payment Act.

The trial court properly dismissed the mandamus count because there was an adequate remedy at law, namely, an action for damages. *See Huffman v. State*, 813 So. 2d 10, 11 (Fla. 2000) ("In order to be entitled to a writ of mandamus the petitioner must have a clear legal right to the requested relief, the respondent must have an indisputable legal duty to perform the requested action, and the petitioner must have no other adequate remedy available.").

As to the class action count, the Fourth Amended Complaint failed to allege sufficient facts to show that all four prerequisites to class certification were satisfied. Also, CCI had ample opportunity to employ discovery to ascertain the necessary information that must be pleaded. *See Frankel v. City of Miami Beach*, 340 So. 2d 463, 469 (Fla. 1976). It was not an abuse of discretion for the trial court to deny leave to amend to file a Fifth Amended Complaint. *See Barrett v. City of Margate*, 743 So. 2d 1160, 1162 (Fla. 4th DCA 1999) (noting that "[a]lthough there is no magical number of amendments which are allowed, dismissal of a complaint that is before the court on a third attempt at proper pleading is generally not an abuse of discretion").

*Affirmed.*

KLINGENSMITH, C.J., and DAMOORGIAN, J., concur.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***

16